POTTER, Trustee, *v.* BERTHELET and another.

*(Circuit Court, E. D. Wisconsin. May 8, 1884.)*

1. RULE FOR THE INTERPRETATION OF A CONTRACT.
   A contract is to be construed according to the intent of the parties thereto, and by looking at all the provisions of the instrument, and not one alone. But, if the language of the contract is plain and unambiguous, interpretation is not allowable to ascertain the intent of the parties thereto. If it admits of more senses than one, it is to be interpreted in the sense in which the promisor had reason to suppose it was understood by the promisee

2. THE WORD "EACH" CONSTRUED.
   The word "each" occurring in the phrase "and each of them," in a contract, construed to mean "every."

3. DEMURRER OVERRULED.
   A complaint based upon the breach of a contract examined, and *held* to state a cause of action, and that a demurrer must be overruled.

Demurrer to Complaint.

*Davis, Riess & Shepard,* for plaintiff.

*Jenkins, Winkler & Smith,* for defendants.

DYER, J. In an agreement of date April 11, 1870, made between Edward L. Baker, Henry Knight, and Edwin Dayton, of the first part, and the defendants, Henry and Joseph R. Berthelet, of the second part, it was, among other things, recited that—

"Whereas, the following specified letters patent of the United States, granted to secure certain inventions therein set forth, of machines and of improvements in machines, and in mechanical devices for moulding or forming hydraulic sewer and drain pipes, of cement or of other plastic material,—

namely, number 11,440, dated August 1, 1854; number 26,614, dated December 27, 1859; number 2,137 or 33,161, dated August 27, 1861; number 1,277, dated February 25, 1862; number 34,890, dated April 8, 1862; number 35,243, dated May 13, 1862; number 35,692, dated June 24, 1862; number 45,229, dated November 29, 1864; and number 3,413, dated April 27, 1869,— have all been assigned and transferred unto the said Baker, Knight, and Dayton, to hold upon certain trusts recited in the written agreement made and executed by them and James L. Woodward, of the city of New York, on the eleventh day of April, 1870, whereby they, the said trustees, were fully empowered, among other things, to grant licenses under said letters patent: Now, therefore the said trustees, in consideration of twenty-five hundred dollars to them paid, the receipt whereof is hereby acknowledged, do hereby lease unto the said Henry Berthelet and Joseph R. Berthelet the following specified machinery and apparatus, embodying in their construction the inventions patented as aforesaid, or some of them, namely, complete machinery for manufacturing all sizes of pipes or other articles to be made thereon, to be held and used by the said lessees during the continuance of the terms, whether original or extended, for which the said letters patent *and each of them* have been or may hereafter be granted and secured, by assignment or otherwise, to the said trustees, or to their successors in the said trust, unless otherwise sooner determined by the conditions or limitations hereinafter specified."

The agreement then proceeds to prescribe various conditions further declaratory of the rights of the parties, the lessees obligating themselves by covenant to keep the machinery and apparatus leased to them in good working order and thorough repair, and to pay to the trustees, or to their assigns or successors in trust, during the continuance of the lease, license fees for all pipe or similar articles of manufacture operated upon, or moulded or shaped, wholly or partially, by means of the said machinery or apparatus, or any part thereof, upon each and every lineal foot of such pipe or similar articles, one quarter of one cent for each inch in diameter of the bore thereof, such royalty to be paid on sales. It was also further provided—

"That at the expiration of *all the letters patent aforesaid, and of all extensions and renewals thereof*, in which are set forth and claimed the inventions and improvements, and each of them, contained and embodied in the said machinery and apparatus, the said lessees, if they shall have fully complied with the terms and conditions of this lease, shall have the privilege of purchasing the said machinery and apparatus hereby leased, by the further payment of one dollar."

This suit is brought by the plaintiff, Potter, as successor in interest in said agreement, to recover royalties alleged to be due on account of hydraulic and other pipe, and material manufactured by the defendants by means of said machinery, and sold by them between January 1, 1880, and November 29, 1881. The complaint is demurred to on the ground that it does not state facts constituting a cause of action. It appears from the allegations of the complaint that the various letters patent enumerated in the agreement, and the renewals of such of them as were extended, expired, from time to time, between April, 1879, and November, 1881, the first expiration

occurring April 8, 1879, and the last, November 29, 1881. It is also alleged that the defendants paid all royalties that accrued prior to January 1, 1880, in quarterly installments, as they fell due, according to the terms of the agreement, but have refused to pay the royalties accruing between that date and November 29, 1881, when the last patent expired.

The decision of the demurrer turns upon the construction of the clause of the agreement which provides that the machinery shall be "held and used by the said lessees during the continuance of the *terms, whether original or extended, for which the said letters patent, and each of them,* have been or may hereafter be granted and secured, by assignment or otherwise, to the said trustees," etc. The contention of counsel for the defendants is that the contract was not in force at the time the alleged breach occurred; that it ceased to be in force April 8, 1879, when the first expiration of one of the series of patents occurred; that it did not continue in operation until the expiration of all the patents, but fell with the patent which first expired. This view of the case is based upon the construction which counsel give to the words "and each of them," in the clause of the agreement last above quoted. It is said that these words are not equivalent to the expression "and any of them," it being conceded that if those words had been used, the contract would have continued in force until the last of the series of patents expired. It is a cardinal rule that a contract is to be construed according to the intent of the parties to the instrument; that in ascertaining that intent we are to look to the language in which they have spoken, and if that language is plain and unambiguous, interpretation is not allowable. *Ogden* v. *Glidden,* 9 Wis. 52.

But it is also true that in construing a contract like this, and in arriving at its meaning and the intent of the parties, all the provisions of the instrument are to be looked at, and not single clauses alone. Thus examining this agreement, it seems to me quite obvious that counsel make the question too strictly one of purely grammatical construction. If the literal construction of the words "and each of them" would manifestly violate the intent of the parties, as such intent may be gathered from the whole instrument, it ought not to prevail. It is to be observed that the *habendum* clause begins with the language "to be held and used by the said lessees during the continuance of *the terms,* whether original or extended, for which the said letters patent," etc.; thus, in the beginning, evincing an intention to make the term of the lease co-extensive with the life of all the patents. Then follow the words "and each of them;" the word "each," as a distributive adjective pronoun, denoting every one of the several letters patent composing a whole, considered separately from the rest. Webst. Dict. Upon the argument this case was put: Suppose an estate is granted to one, to be held during the lives of several persons, *and each of them,* would not the estate lapse on the ter-

mination of either of the specified lives? Admitting that it would, is the case supposed precisely analogous to the case presented by the language of this lease? I hardly think it is. In other words, in the connection and sense in which the words "and each of them" stand in the *habendum* clause, and considering what precedes those words, are they not equivalent to the expression "and every of them," or the expression "and any of them?"

As illustrative of the application of certain principles of legal construction, the case of *Hayden* v. *Snell*, 9 Gray, 365, is perhaps germane to the question we are considering. There was a promise to pay J. S., or his wife, A. S., an annuity during their natural lives. The plaintiff, in her declaration, set forth the promise, the death of her husband, and the subsequent refusal of the defendant to pay the annuity to her. The defendant demurred, and contended that the words "during their natural lives" should be construed according to grammatical rules; that "during their natural lives" meant the same as "during their joint lives," and not the same as "during their lives and the life of the survivor of them." But the court held that the contract declared on was, in legal effect, an agreement to pay the stipulated sum yearly to both of the persons named, as promisees, and so long as both survived an action might have been maintained in their names jointly. Upon the death of either, the right of action would remain in the survivor. It was, therefore, a promise to pay both, and the survivor of them, so long as they or either of them should live.

However, conceding that the construction which counsel, in support of the demurrer, place upon that part of the *habendum* clause of the agreement referred to, is literally and grammatically correct, it seems to me manifest that its adoption would defeat the true intention of the parties as fairly to be collected from the whole agreement. *Tuller* v. *Davis*, 4 Duer, 191. Where the terms of a promise admit of more senses than one, it is to be interpreted in the sense in which the promisor had reason to suppose it was understood by the promisee. *White* v. *Hoyt*, 73 N. Y. 505. In the first place, all the letters patent are enumerated in the agreement. At the date of the agreement, a pecuniary consideration, considerable in amount, ($2,500,) was paid by the defendants for the right to use the patented machinery, and it is evident, from the various provisions of the lease, that it was expected an extensive business would be done. The lessees were to keep books of account, which were to be open to the inspection of the lessors, and were to render to the lessors, and their assigns and successors, quarterly accounts, showing the quantities and kinds of articles manufactured by them during the continuance of the lease. They agreed, among other things, that they would not employ nor operate any other machinery or apparatus for making or moulding cement or other plastic pipe, or similar articles of manufacture, than that so leased; that they would preserve upon the machinery the titles and dates of the letters patent, as placed thereon

by the lessors, their assigns or successors in the trust; and that they would not violate or infringe any or either of said letters patent, nor dispute or contest the validity of the same, or the title thereto of the lessors. The lessors on their part bound themselves not to grant to any other person or persons any lease of such machinery, or right to make, sell, or use the same within the limits of the territory granted to the defendants.

Then, of still more persuasive force, as evincing the understanding of the parties with reference to the term of the lease, it was provided, as we have seen, that *at the expiration of all the letters patent, and of all extensions and renewals thereof,* the lessees, if they had fully complied with the terms and conditions of the agreement, were to have the privilege of purchasing the machinery and apparatus by the payment of one dollar. By this provision it could not have been understood or intended that at the first expiration of one of the patents the lease should cease to be operative, and then at the expiration of all the patents the lessees should have the right to purchase the leased machinery by the payment of one dollar. Such a construction of this provision would involve a manifest absurdity; because, in that case, at the first expiration of one of the patents and the consequent termination of the lease, the leased machinery would, of necessity, pass back into the possession of the lessors, who would be obliged to hold it until the expiration of all the letters patent, and then sell it to the lessees for one dollar, if they elected to purchase it, which election could only be declared after all the patents had expired. It seems very clear, when we give proper force to this clause of the lease,—which is a very important one,—and when we consider all the other provisions which have been adverted to, that it was the intention of the parties to make the term of the lease co-extensive in duration with the life of all the patents, and that no violence is done to rules of legal construction when we construe the words "and each of them," in the *habendum* clause, in accordance with such intention, rather than by rules of strict grammatical construction applicable to those words alone.

Demurrer overruled.