THE CHICAGO LUMBER COMPANY v. THE TIBBLES MANUFACTURING COMPANY *et al.*

**Contracts**: CONSTRUCTION : DIFFERENT INTENTION OF PARTIES. In an action to establish and foreclose a mechanic's lien for lumber, it appeared that F., the member of the plaintiff firm who transacted all the business on its part, had subscribed for stock in the defendant company, and had taken a writing directed to the plaintiff firm, wherein the defendant agreed to take its pay for the stock so subscribed in lumber. The evidence showed that the defendant company, when it made the contract and ordered the lumber, understood that it was to be paid for by the stock so subscribed for ; and F. testified that he understood that it was optional on his part whether or not the lumber should be furnished on the stock subscription, but, on cross-examination, he confessed that he supposed at the time that the defendant understood that the lumber was to be paid for in stock. *Held* that plaintiff was bound, under section 3652 of the Code, by the contract in that sense in which he supposed defendant understood it, and that there could be no recovery.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

FILED, MAY 31, 1890.

THE plaintiffs' petition was in the usual form for the foreclosure of a mechanic's lien, and shows that about the first of June, 1888, it sold to the defendant Tibbles Manufacturing Company lumber of the value of $3,402.72, for the erection of certain factory buildings in Des Moines, and asking judgment, and the establishment of its lien. The Tibbles Manufacturing Company answers, denying allegations of the petition, and averring the purchase of the lumber to be from one Robert Fullerton, who was a member of the plaintiff firm, and bought of the defendant twenty shares of its stock at the agreed price of one hundred dollars per share, and agreed to pay therefor in lumber, and that the lumber in question was delivered and received in payment for said stock. The district court determined the issues in favor of the defendants, and from its judgment the plaintiff appeals.

*Berryhill & Henry*, for appellant.

*Barcroft & Bowen*, for appellees.

GRANGER, J.—The question we are required to determine is whether the lumber was purchased of the plaintiff company, or was received from Fullerton in payment for stock. Fullerton was, as a member of the plaintiff company, in charge of its business at Des Moines, and sold the lumber. About May 12, 1887, he subscribed for twenty shares of defendants' stock, and defendants claim that it was then verbally agreed that it was to be paid for in lumber. At the time the stock subscription was made, Fullerton received the following writing:

"*Chicago Lumber Company, Des Moines, Iowa:*

"The Tibbles Manufacturing Company hereby agrees to receive such kind of lumber as it can use in erecting its factory in payment of the two thousand

dollars' stock subscribed for by Robert Fullerton. Such lumber to be furnished at the market prices

"TIBBLES MANUFACTURING CO.,

"C. E. TIBBLES,

"President."

It is unquestioned in the case that, at the time of the subscription, there was talk and some understanding as to the stock being paid for with lumber; but the difference as to the understanding seems to be this: That the defendant understood that the payment was to be in lumber; and Fullerton, that he had the privilege or option of paying in lumber or cash. It was some time thereafter that Mr. Tibbles, president of the defendant company, went to the office of Fullerton, in Des Moines, and obtained Fullerton's terms or prices for lumber needed for the company's buildings. Fullerton was at this time, and had been previous thereto, engaged in the lumber business at Des Moines, but only as a partner in the plaintiff firm, but having exclusive control of the business at Des Moines, including the making of contracts. Tibbles presented a memorandum of the lumber he desired, which was copied in an "estimate book," and the prices fixed. Tibbles checked a part of the list, and made his order, amounting to $3,180.89. Subsequent orders were made completing the amount first stated. The lumber was charged on the books of the plaintiff company to the Tibbles Manufacturing Company. The testimony of Mr. Tibbles is that, at the time he was at the office, and gave the order for the lumber, it was talked that the payment therefor was to be the stock of the company, and that, when he made objections to the price fixed for the lumber Fullerton said, in substance, that he could compete with the prices of others if they would take their pay in stock, as he did. Mr. Tibbles also testified that it was well understood at the time the lumber was ordered that it was being furnished in pursuance of the agreement made when the stock was taken. There is considerable other testimony corroborative of Mr.

Tibbles to the effect that Fullerton understood when he purchased the stock that it was to be paid for in lumber. Fullerton, in terms, denies his understanding that he was under obligation to pay in lumber, or that he delivered the lumber with that understanding on his part.

There is, however, a view of the case that seems conclusive, and sustains the action of the court below. That Tibbles understood when the stock was sold that it was to be paid for in lumber, and that he understood when the lumber was ordered that it was in payment for the stock, there is hardly room for doubt. In fact, the testimony of Fullerton tends to show such fact. The following is a part of his testimony:

"Q. At the time you made that subscription, or prior thereto, what had been said about buying lumber from you? A. The understanding was, I should have the privilege of paying for the stock in lumber.

"Q. Was not it also understood that they were to have the privilege of paying for the lumber in stock? A. There was no contract to that effect.

"Q. You do not say there was any contract to the effect that you were to pay for the stock in lumber? A. Yes; we have a contract to that effect.

"Q. Don't you know that they were not to pay for the lumber in cash, and that that was the understanding when they got the lumber from you? A. I do not know what their understanding may have been. I was looking only to my side of the question, of course. They held out as an inducement for my subscription that I should have the privilege of paying for the stock in lumber.

"Q. And didn't you hold out an inducement that they, for letting you sell the lumber, could pay for it in stock? A. No, I did not consider it that way. I do not know how they considered it.

"Q. Didn't you consider it so? A. I was looking at it from my side. All I wanted was the privilege of furnishing the lumber.

The Chicago Lumber Co. v. The Tibbles Manuf. Co.

"*Q.* Did you not consider they understood that they were to pay for that lumber in stock? Didn't you know that? *A.* I presume they did, but I was not looking at their side of the question at all.

"*Q.* I am asking you if you did not know, as a business man, and in view of what was said between you, that they did not expect to pay for that lumber in money? *A.* They made a written memorandum that I might pay for the stock in lumber.

"How often do you want to tell that? I am talking with you about what you thought they expected at that time. Did you understand they expected to pay for that lumber in money?

"Mr. Henry: The witness having stated that the proposition was reduced to writing, the plaintiff objects to any testimony with respect to the character of that proposition as incompetent.

"Judge BARCROFT: I am asking you the plain question, and I want you to understand it. Did you expect or did you not know, at the time of that transaction, that they expected to pay for the lumber in stock? *A.* I presume they did.

"Court: You think they understood at the time you made the contract that they were to pay for the lumber in the stock? *A.* I presume that was what they understood. All I wanted was the privilege of paying for the stock in lumber, provided the stock was all right."

We understand from the testimony that Mr. Fullerton, at the time of making the contract, thought that by its terms he could pay in lumber or cash, but that he then understood, or at least had reason to understand, that Tibbles took a different view of the contract, and expected the pay in lumber. To the question, "Did you not consider they understood that they were to pay for the lumber in stock,—didn't you know that?" he answered, "I presume they did, but I was not looking at their side of the question at all." Again, to the question, "Did you not know at the time of the

transaction that they expected to pay for the lumber in stock?" he answers, "I presume they did." Then, to this question by the court, "You think they understood at the time you made the contract that they were to pay for the lumber in stock? *A.* I presume that was what they understood. All I wanted was the privilege of paying for the stock in lumber, provided the stock was all right." With the fact established that Tibbles understood that the stock should pay for the lumber, which must, of course, be the understanding of his company, we add thereto the fact that Fullerton believed, or had reason to believe, that Tibbles so understood; and what is the rule of law to be applied to that state of facts? Code, section 3652, is as follows: "When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it." Is not that rule of law conclusive of the case? Tibbles understood the stock was to pay for the lumber; and, from Fullerton's testimony, he supposed they so understood it, and we may assume he had reasons for it. The sense in which the other party understood it must prevail. We think the judgment below should be

AFFIRMED.