EVAN F. EVANS, Appellant, v. I. C. MCCONNELL.

**Practice:** CONSOLIDATION: *Law and equity.* Where an action is properly begun in equity, it should be tried there, although issues triable at law are subsequently tendered, and when the defendant in the equity suit begins a law action involving substantially the same issues as said equity suit, in the same court, it is proper to consolidate both suits and try them to the court.

**Understanding of Contract:** CONSTRUCTION OF STATUTE. Knowledge by a building contractor that the owner was acting in the belief that the contract included a certain kind of stone work, inspired by conversations between them that the job was to be as good as that done on a certain wall which contained that kind of work, brings the case within Code, section 3652, providing that when the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other party understood it.

ON RE-HEARING.—MONDAY, OCTOBER 19, 1896.

Under Code, 3652, which provides that, "when the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he has reason to suppose the other party understood it," where a contract provided that the architect should decide whether alterations asked for by the

owner were within its terms, and the contractor, knowing that the owner understood them to be so, made the alterations without secur ing a decision from the architect, he can not recover therefor.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTHE, Judge.

SATURDAY, MAY 25, 1895.

ACTION for balance claimed to be due for work done upon, and materials furnished for a dwelling house, cistern, and cess-pool; also for damages for slander. From a decree for McConnell, and in favor of certain lien-holders, Evans appeals.—*Affirmed.*

*A. M. Antrobus* and *C. L. Poor* for appellant.

*Blake & Blake* and *Kelley & Cooper* for appellee.

KINNE, J.—I.   In August, 1892, Evans commenced an action against McConnell, claiming that the sum of five thousand two hundred and fifty dollars was due him for materials furnished and work done upon a certain dwelling house.   In a second count, plaintiff claimed damages in the sum of five thousand dollars for slanderous words spoken by defendant of plaintiff. December, 1892, defendant filed an answer and cross-bill in equity, denying every allegation in the second count of the petition, and alleging that any words he had spoken of and concerning plaintiff were true.   He denied that plaintiff furnished the materials and work set forth in the first count of his petition, and denied any indebtedness to plaintiff. Further answering, he says he entered into a contract in writing with plaintiff to erect for him a dwelling house, and that plaintiff had not performed said contract.   In his equitable cross-bill he alleged that on July 14, 1891, he entered into a written contract with Evans, which is set forth, wherein Evans agreed with

McConnell to, under the direction of the latter's archi-
tect, and to his satisfaction, do the work and furnish
the materials for and complete a dwelling house in
accordance with certain plans and specifications men-
tioned. Division two of said contract provided that
the owner might make changes as the work progressed,
without avoiding the terms of the agreement, which
changes or alterations should be paid for or deducted
according to the rate at which the work had been
taken. By division six, of said contract, the owner,
after giving three days' notice by the architect, is
authorized to take control of the work and complete
the same in case the contractor refuses or neglects to
supply proper materials or skilled workmen, or other-
wise fails to perform any of the agreements on his
part. The contract also provided for a consideration
of seven thousand three hundred and fifty dollars, to
be paid at times therein fixed. After entering upon
the work, Evans agreed in writing to make certain
changes or alterations in the work from the plans, at
prices agreed upon, which, so far as material to this con-
troversy, may be considered hereafter. It is averred that
Evans neglected and refused to furnish proper materi-
als and skilled workmen, and to prosecute the work in
accordance with his contract, and that in May, 1892, he
abandoned the work, and McConnell was compelled to
and did take charge of and procure the completion of
the work; that Evans failed to pay for labor and
materials which he caused to be procured for said
house, and various mechanic's liens had been filed
against the property, in the aggregate sum of two
thousand two hundred and ninety-nine dollars and
sixty-four cents, which were incumbrances upon the
property; that the liens of Churchill Drug Company
and T. H. Dowler had been foreclosed, and decrees
entered against the property, and that actions were
pending upon the other claims; that McConnell was

damaged in the sum of five hundred dollars by reason of defective material furnished and unskilled work done by Evans in the attempted performance of the contract. McConnell claims that, including cash paid out on account of the work and the liens aforesaid, and damages to which he is entitled, Evans should be charged with eight thousand seven hundred and thirty-five dollars and fourteen cents; that he is entitled to credit, the contract price, and extra work done and materials furnished, in the total sum of seven thousand six hundred and three dollars and sixty-five cents,—leaving a balance of one thousand one hundred and thirty-one dollars and forty-nine cents due McConnell. McConnell asks an accounting; that the lien holders be required to exhibit their claims; that a decree be entered as to how said liens shall be canceled; and that for the sum due him he may have judgment against Evans; and for equitable relief. On January 6, 1893, Evans filed a reply to McConnell's answer and cross-bill, alleging that, after the making of the contract, he began work on the house, but McConnell concluded to make a better house, and from time to time requested many material and expensive changes which are set out in detail; that he deprived Evans of the exclusive control and management of his workmen, and assumed to manage and control the work, impairing the cost and efficiency thereof; that, without cause, he refused to permit plasterers to work on the house, to the loss of Evans; that McConnell represented to material men who furnished material for the house and caused them to believe that they might lose their claims, and warned them not to sell plaintiff on credit; that he induced them to file liens upon the building; wherefore said material men refused to sell Evans on credit, and McConnell refused to furnish the cash to buy, although he then owed Evans on the work

done. For these and other reasons, it is averred that McConnell cannot rely upon said contract; that there is no dispute between Evans and the material men as to the amount due them. Other allegations of the cross-bill are denied. January 17, 1893, Evans moved the court to transfer to the equity side of the docket, and set down for trial, as an equitable issue, count one of Evans' petition, and the issues joined thereon, also the cross-bill, and the issues joined thereon. This motion was sustained, to which ruling an exception was taken. March 30, 1893, Evans filed a supplemental reply, admitting the purchase of certain materials from certain lien-holders, and that they had filed liens as stated in the cross-bill. Evans moved to transfer the cause to the law docket, and to set the cause down for trial to a jury, which motion was overruled, and an exception taken. Evans dismissed the slander count of his petition. August 31, 1892, McConnell filed his bill in equity, asking for a settlement and accounting, and for a judgment of one thousand one hundred and thirty-one dollars and forty-nine cents. This bill sets forth in substance the same facts as appear in McConnell's cross-bill, filed in *Evans' Case.* December 29, 1892, Evans made answer, in which he pleaded the facts set forth in his petition and reply in the other action, and asked that the trial of this cause be postponed until the other one had been tried to a jury. December 29, 1892, certain lien-holders filed their answers and cross-petitions, but no notice thereof was served upon Evans. March 30, 1893, Evans filed a supplemental answer, alleging that, the same day this suit was commenced, he began an action in this court against McConnell, demanding judgment for ten thousand dollars; that the latter answered; that plaintiff herein pleads the same facts and asks the same relief as in this case, and that said case is yet undetermined. He pleads said action in abatement of this one. He

admits the claim of the lien-holders.   March 30, 1893,
Evans moved to transfer this case to the law docket,
which motion was overruled and excepted to.  McCon-
nell filed answers to the cross-bills of the lien-
holders.  McConnell filed a motion to consolidate
the two actions, which was sustained and
excepted to.   June 17, 1893, the court, on its own
motion, referred the cause to Hon. E. S. Huston, as
sole referee, to hear and determine all issues of fact
and law, and report at the next term of court, to which
order Evans excepted.   Trial was had before said
referee, at which time Evans objected to the trial of
any issues of fact before the referee.

The findings of the referee are lengthy, and we
summarize them as follows:   That the contract was
entered into for the construction of the house for
seven thousand three hundred and fifty dollars, and
its performance secured by bond of C. L. Poor, for two
thousand dollars; that Evans proceeded to do the
work until May 5, 1893, when, the work being unfin-
ished, it was taken out of his hands, and finished by
another; that the work dragged from the beginning;
the plastering did not begin until the week before
Christmas in 1891, and then McConnell stopped it for a
time, claiming it was unsafe to plaster then; that on
May 2, 1892, McConnell, through the architect, served a
notice upon Evans that, owing to his failure to comply
with his contract, one Sanson would complete the
work; that the latter completed it at an expense of six
hundred and fifteen dollars; that liens were filed as
claimed by McConnell; and that the latter informed
material men that they must not trust Evans on the
credit of the building; that the delay in the work was
caused by its taking more time to do the stone work
than was anticipated; workmen were hard to get;
time was lost in making changes, some because
of errors of the contractor; Evans was without means,

and had difficulty to obtain materials; the weather in the spring of 1892 was unfavorable; that, at the time, McConnell was insisting upon closer joints and better stone work; he did not promise to pay therefor, nor did Evans claim any compensation therefor; that, if Evans was entitled to recover for better stone work than the specifications provided for, he would be entitled to one thousand six hundred dollars therefor, but there was never any promise, expressed or implied, on part of McConnell, to pay for such work; that the taking of the work out of Evans' hands was by his consent, and not wrongful; that McConnell, by his acts, led Evans to believe the performance of the contract, as to time, would not be exacted, and that a reasonable time would be allowed him in which to complete the job; McConnell is allowed five hundred dollars for damages for defective work and material; that McConnell should be charged thirty dollars for extras on the attic floor. He finds that McConnell owes Evans one thousand four hundred and forty-nine dollars and eighty-nine cents and interest. As conclusions of law, the referee finds that the work done by Evans was not under an implied or oral contract, and that the contract price should govern; that the work was taken from Evans in accord with the provision of the contract; that Evans is not entitled to recover extra for stone work; that the right to enforce the penalty has been waived; that McConnell has the right to pay the liens, and to have judgment against Evans for said sum, less the amount found due Evans. This report was excepted to, the exception overruled, and a motion for judgment on the report sustained, and a decree entered ordering the payment of certain liens. After payment of these liens, a decree was entered, in favor of McConnell, and against Evans, for nine hundred and forty-three dollars and costs, which was excepted to.

II.    Was there error in refusing to grant Evans a jury trial?    It may be well enough to bear in mind, that the petition in the case of *McConnell v. Evans* was first filed.    It set forth the contract, the failure of Evans to comply with its provisions, his abandonment of the work, the filing of mechanics' liens against the property; and the fact that some of them had been foreclosed; that he had no knowledge as to the accuracy of the amounts claimed upon said liens.    He made the lien-claimants parties defendant.    He asked for an accounting, and that the several lien-holders be required to exhibit their claims, and for a decree as to how said liens should be canceled and said incumbrances discharged. Surely, this petition presented matters of equitable cognizance.    Evans answered, and then the lien holders filed cross-bills, asking for an accounting, for judgment, and the establishment of their liens. *McConnell's Case*, then, was properly commenced in equity.    His petition presented issues only cognizable in a court of equity.    Now, Evans pleaded in this case substantially the same facts as are set forth in the case which he began the following day.    If it be conceded, that the issue, as presented in *McConnell's Case*, by Evans, was one which would ordinarily be triable to a jury, still, inasmuch as the action was commenced in equity, and presented issues, so far as plaintiff therein was concerned, only cognizable therein, there could have been no separation of the issues for trial, giving those properly belonging to an ordinary action to a jury, and those of equitable cognizance to the court.    We have held, that the rule as to the separation of such issues for trial, does not apply to equitable actions.    *Ryman v. Lynch*, 76 Iowa, 588 (41 N. W. Rep. 320).    It was held, in that case, that the tendering in an equitable case, of an issue properly triable to a jury, did not change the character

of the proceeding. *Wilkinson v. Pritchard*, 93 Iowa, 308 (61 N. W. Rep. 965). The relief asked in *McConnell's Case* could be granted only in a court of equity. When a case is properly commenced in equity, and the relief asked can only be granted there, the defendants cannot force its transfer to the law side of the calendar for trial to a jury by consenting that, if the plaintiff is found entitled to the relief asked, it may be granted in a court of law. Id. *McConnell's Case* was at all times triable as an equitable action. We have seen, then, that *McConnell's Case* could not be tried as a law action, nor could the issues be separated, and part tried to a jury and part to the court. Now, how stands the other case? The petition in it was filed the day after *McConnell's*. Concede, for the sake of argument, that that petition presented only matters triable to a jury. The answer and cross-bill presented the same equitable issues as appeared in *McConnell's Case*. Hence, there were two cases involving substantially the same facts,—the one begun as a law action, and the other in equity. Surely the duty did not devolve upon the court to try both of these cases separately,—the one to a jury, and the other to the court. That would be an idle ceremony, and yet that is what must be done if Evans' contention is correct. The court must try the equity case begun by McConnell. He could not send that to a jury. He must then try that himself, and let a jury have the Evans case, or he must do as he did,—consolidate them, and try the consolidated case himself. We discover no law, rule, or decision, nor are we cited to any, which requires the court, under such circumstances, to send one of the cases to the jury for trial when he must try the other which involves the same questions. The trial of the consolidated case disposed of the whole matter, and adjudicated the rights of all parties. There was no error in

the rulings refusing Evans a jury trial, or in consolidating the cases, and trying the consolidated case to the court.

III.　One of the principal claims of Evans, which was not allowed by the court below, was for two thousand dollars, for extra work and labor in doing ashlar stone work.　He claims that he was not required by the contract to do this work in the manner in which it was done; that this expense was incurred at the instance and request of McConnell; and that the latter agreed to pay therefor.　McConnell claims that the work was done as the contract provided, and that he never agreed to pay extra for it.　The referee finds, in substance, that the work claimed for was outside of the contract, and was done at McConnell's instance, but the latter never promised to pay for it; that, if Evans was entitled to recover for it, the amount he would be entitled to, would be one thousand six hundred dollars, but, as McConnell did not agree to pay for it, Evans cannot recover it. It seems to us that as it is clear this work was not included in the contract, and that it was in fact done at McConnell's instance, Evans is entitled to recover for it, regardless of any promise on McConnell's part to pay therefor, unless Evans has, in some way, waived such right.　It is contended, and the referee so finds, that this question was virtually determined by the architect in McConnell's favor.　By the terms of the contract, the architect was made the sole interpreter as to the drawings and specifications, their meaning and intent, and his decision was to be conclusive upon the parties.　We do not think any such defense is pleaded by McConnell.　Hence, whatever the evidence may show in relation thereto, having failed to plead that the question was submitted to and determined by the architect, McConnell is in no position to now claim that Evans is concluded by such a decision, if, indeed, one was in fact made.　It

is said that Evans admits that McConnell claimed this
work was according to the contract; that, so knowing,
he (Evans), without bringing the matter before the
architect for his decision, continued to go on with
the work, and hence the referee found that the case
was within the provision of section 3652 of the Code.
That section provides: "When the terms of an agree-
ment have been intended in a different sense by the
parties to it, that sense is to prevail against either
party in which he had reason to suppose the other
party understood it."    Now, we have a case where
the meaning of the provision of the contract touching
the stone work was a matter of contention between
the owner and contractor from an early period in the
work.    It is insisted by the owner and his agent, the
architect, that this particular work, as in fact done,
was in accord with the provisions of the contract.
The contractor knew when he began the work that
such was the owner's claim; yet, with that knowledge,
he proceeded with the work without referring the mat-
ter to the architect for his determination.    It is very
manifest that this is a case where the terms of the
agreement relating to this stone work were intended in
a different sense by these parties.    It is equally clear
that the contractor began and prosecuted this particular
work knowing that the owner understood that the
contract called for work of the kind he was doing.
His own evidence shows that he knew McConnell
understood that he was getting in this stone work
only what the contract called for.    It occurs to us
that the court below rightly held that the section of
the statute quoted applies and controls.    Evans could
have protected himself by bringing the matter before
the architect for his decision, as the contract pro-
vided.    Having failed so to do, and having prosecuted
the work knowing that McConnell understood that
the work as it was being done, and was done, was

within the letter of the contract, the rule presented by the statute must control; and it was properly held that Evans could not recover therefor. *Chicago Lumber Co. v. Tibble's Manufacturing Co.*, 80 Iowa, 369 (45 N. W. Rep. 893.)

IV.   Evans contends that he had a right to rescind the contract, and to recover the reasonable value of his labor done, and materials furnished. We need not determine that question. The evidence shows very satisfactorily that Evans never undertook to rescind the contract. We cannot consider it in detail. Nor was the work taken out of Evans' hands wrongfully. Indeed, there is evidence to show that he was not only not averse to having the job taken out of his hands, but recognized his own inability to complete it.

V.   Counsel file a stipulation in this court, showing that the mechanic's lien of Kemper has been settled, and the appeal, so far as it pertains to it, dismissed.

VI.   Lastly, it is contended that the allowance of the five hundred dollar damages to McConnell for defects in the construction of the house, is more than the evidence warrants. We cannot recite these defects. They were many, and some of them serious. While the evidence did not show in detail the damages as to each particular item, it was to the effect that in the aggregate it was five hundred dollars. Evans introduced no evidence whatever as to these matters. We discover no error in the holding of the court below in regard to this item.

After a review of the entire record, we conclude that the decree below should be AFFIRMED.

## SUPPLEMENTAL OPINION ON RE-HEARING.

### MONDAY, OCTOBER 19, 1896.

ROTHROCK, C. J.—A petition for re-hearing was
filed in this case, in which it was urged that this court
erred in applying section 3652 of the Code to the facts
disclosed in the evidence. No other question was
presented in the petition. Oral arguments were made
by counsel for appellant and the appellee when the
petition was submitted. A majority of the members
of the court were of opinion that the record and evi-
dence should be re-examined, as far as the third point
in the opinion was involved, and the petition for
re-hearing was sustained. After the petition was
filed the appellant filed an additional argument, in
which other questions in the case are discussed.
The appellee, as was his right, filed a printed argu-
ment after the petition for re-hearing was granted.
We mention this condition of the record for the pur-
pose of saying that the only doubt entertained by any
member of the court at any time was whether the
appellant was, under the evidence, precluded from
recovering extra compensation for the stone ashlar
work, and whether the section of the Code above cited
was applicable to the case. In view of the contention
between counsel as to the weight of the evidence upon
this question, we have given the whole record a care-
ful examination. We desire to refer to the following
statement in the opinion: "Now, we have a case where
the meaning of the provision of the contract touching
the stone work was a matter of contention between the
owner and contractor from an early perio in the work."
Our re-examination of the evidence lea ls us to the
conclusion that this statement is too broaa    It should
have been limited to contentions about oth r parts of
the work, and possibly to some disputes which occurred

in reference to the quality of the stone used in the ashlar work. It appears that, before the stone ashlar work was commenced, Evans had done some of that kind of work on a house owned by one Cooper. The referee in this case found the following among other facts: "I find, however, that neither McConnell nor the architect gave Evans any directions as to the manner in which the stone should ·be prepared; and it is without dispute that, before the ashlar work on McConnell's house was begun, he and Evans examined some ashlar work that had been done by Evans on Cooper's house recently, and their talk was that McConnell's job was to be as good as Cooper's, or similar talk. The stone in Cooper's job was cut by a stone cutter." The referee further found as follows: "But I feel bound to further find that there was never any promise or agreement, express or implied, on the part of McConnell to pay for such work. The burden is on Evans to establish this claim, and it is clear to my mind that he has not sustained it." We think these findings are supported by a fair preponderance of the evidence. It is true that Evans testified as a witness that McConnell expressly agreed that he would recompense him for the claimed extra cost of the ashlar work. And one or two of the workmen who were engaged in the building testified that McConnell at one time commenced the work, and said, in substance, to Evans, that if all the work was done in that way, he would be satisfied, and would make it all right with him (Evans). But McConnell, in his testimony, denied that there was any statement made by Evans, that he claimed any compensation for extra work on the walls. The following is a part of his testimony: "We talked over the broken ashlar before the contract was made. Talked with the architect and Evans about it, and, if I didn't know before, what broken ashlar was, I became

conversant with it before I wrote my contract. While we were discussing this, Evans gave me two pictures of houses of that class of work, and said he brought them to show what I might expect in my house. When I made the contract no work had been done at Cooper's. Cooper's work was commenced first, and the foundations carried up, ready for the frame part of the house, before any of the broken ashlar work on my house was done. Evans said it was going to be broken ashlar in the Cooper foundation, and he would show me a sample of how it would be, and what I might expect in my house. When he got the Cooper wall up two or three feet above the turf line, we went over together, and he showed it to me, by the bay window, what kind of work,—only he said my work would be a little better than this, because there will be some larger stone in it; there will be more face to the stone. He never said, that to do my house like the ashlar work in Cooper's would bankrupt him, or that kind of work would cost more than that I was to have in my specifications. He never asked me to pay him more for the stone work, and I never heard of any intimation that he expected more pay until the last two or three days in August, 1892. Never heard it mentioned or intimated that he expected any more from me than the contract called for, and I never promised to pay him more on the stone work. I just let the agreement stand as it is. After I learned that Evans had made a contract for the Kemper stone, I went down to Kemper's quarry, merely out of curiosity, and had a little talk with him, but I didn't interfere with his contract. I went there three or four times, or several times, after that, at Evans' suggestion, for the purpose of urging Kemper to the delivery of the stone, but I went only as Evans requested me to do. There was some pink stone in Kemper's quarry, and I said I thought some of

it scattered around over the wall would look nice, and we would be pleased to have it. I afterwards learned it was an inferior quality of stone." Here is a square and unreconcilable conflict between the testimony of the two parties to the suit. We think the referee and the district court correctly found that the facts and circumstances attending the performance of the work, as well as the testimony of the architect, corroborate McConnell. Other evidence in the case shows that certain alterations and additions were made in the construction of the building, and on December 15, 1891, after the walls were completed, the parties entered into a written contract, by which they fixed the amount to be paid for a large number of items of extra work. No mention is made in this last contract of any claim for extra ashlar work. There was every reason why such a claim should have been made, for Evans had contracted debts for materials, and his creditors were pressing him for payment. Our conclusion is that McConnell acted in the belief, and understood from the beginning, that the contract required ashlar work like that on Cooper's building, and that Evans not only knew that he was acting in that belief, but inspired the belief himself, by adopting Cooper's wall as a model. The case is, therefore, plainly within the section of the Code above cited. We think whatever hardship there is in this case to Evans is to be accounted for by his undertaking the building of the house for a much less sum of money than the labor and materials cost. The former opinion is adhered to, and the decree will stand AFFIRMED.