Inman Manufacturing Company v. American Cereal Company, Appellant.

**Sales:** UNAMBIGUOUS CONTRACT: EVIDENCE OF UNDERSTANDING. Under a plain and unambiguous written provision that certain machinery shall be "satisfactory to the buyer," it cannot be shown by parol that the seller understood the buyer to mean that if the machinery did a specified amount of work it would be satisfactory, either under the common law rule or the statute.

**Same.** A contract which is to be performed in Iowa will be construed, with respect to its performance, by the law of this State; and a party to it cannot show by parol the interpretation of other States put upon the language used, for the purpose of showing that he intended to employ language in accordance with the interpretation of such other States.

**Same:** ACTION FOR PRICE: BURRDEN OF PROOF: INSTRUCTION. Under a contract for the sale of machinery and payment therefor provided it worked to the satisfaction of the buyer, the burden is upon the seller to show acceptance and maturity of the buyer's obligation; and an instruction that the burden is on the buyer to show that the machinery is not satisfactory, and that in determining the question he must have acted in good faith and not from any whimsical, fictitious or mercenary motive, is erroneous.

*Appeal from Linn District Court.*— Hon. J. H. Preston, Judge.

Thursday, January 17, 1907.

ACTION to recover the purchase price for machinery erected by the plaintiff firm on the premises of the defendant company under a written contract. The defense was that the machinery was not in accordance with the requirement of the contract, that it should be satisfactory to the defendant; and there were counterclaims which need not be considered for the purposes of this opinion. The facts with reference to the contract and the efforts of the plaintiff to comply with it appear from the report of the case on a former appeal (124 Iowa, 737), in which a judgment on a verdict for plaintiff was reversed. This is an appeal by defendant from a second judgment on a verdict for plaintiff after a trial on substantially the same evidence (save on one point to be hereafter noted) as that presented in the former trial.

*Dawley, Hubbard & Wheeler,* for appellant.

*Remley & Remley, Jamison & Smyth,* and *H. V. Borst,* for appellee.

McCLAIN, J.— After the reversal in this court of the judgment for plaintiff on the former trial, plaintiff amended his petition by alleging that, at the time the original contract was made, plaintiff was informed by defendant, that, if the machinery referred to in said contract would do the amount of work specified and in the manner therein set forth, it would be satisfactory to defendant, and that defendant well knew it to be the understanding of plaintiff that plaintiff was only required by said contract to furnish machinery which should do the amount and quality of work therein required.

I. By overruling defendant's motion to strike the amendment to the petition above described; by admitting

1. SALES: unambiguous contract: parol evidence of understanding. over defendant's objection the testimony of Horace Inman, a member of plaintiff firm, with reference to conversations between him and defendant's officers as to the meaning in which the terms

of the contract requiring the machinery to be satisfactory to the defendant were used; and by the giving and refusal of instructions, the trial court held that it was competent for plaintiff to show that such terms were understood by the plaintiff in a different sense than that of the legal meaning which was given to them by this court on the former appeal, and that defendant's officers contracting for it understood when such contract was made, the meaning which plaintiff attached to such terms. The theory contended for by the appellee on the trial, and accepted by the trial court, was that it was competent to establish these facts under the provision of Code, section 4617, that: "When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it." The first recognition of any such proposition as a specific rule of evidence, so far as we have been able to discover, is in *Potter v. Ontario & L. Mut. Ins. Co.* (1843), 5 Hill, 147, where Judge Bronson of the New York Supreme Court quotes it in the following language from Dr. Paley without specific reference: "Where the terms of a promise admit of more senses than one, the promise is to be performed in that sense in which the promiser apprehended at the time the promisee received it." The rule next appears as the first portion of section 1697 of the Code of Civil Procedure of New York, as recommended for adoption in the final and complete report of the commissioners on practice and pleading of that State made in 1849. The Legislature of that State had previously adopted a Code of Civil Procedure reported by the same commissioners (appointed in 1847), which is generally known as the "New York Code of Civil Procedure of 1848" (see Hepburn, Development of Code Pleading, 83); but in their final report of 1849 (drafted by Mr. David Dudley Field, one of their number), they added Part IV, of Evidence, which had not been covered by the Code as previously reported and adopted, in which occurs the section already referred to,

stating, as a rule of evidence, the principle announced by Judge Bronson as borrowed from Dr. Paley, though in different language, as follows: " When the terms of an agreement have been intended in a different sense by the different parties to it, that sense is to prevail, against either party, in which he supposed the other understood it." This reported code seems not to have been adopted by the Legislature of New York, but it was, no doubt, the source from which the commissioners of Iowa, appointed in 1848 (see Code 1851, page 470), " to draft, revise, and prepare a Code of laws for the State of Iowa," with authority to "-prepare a complete and perfect Code of laws, as nearly as may be, of a general nature only," borrowed section 2401 of the Code reported by them to the Legislature in 1851, and adopted by it, and ever since known as the Code of 1851. The section of that Code just referred to, which has remained unchanged through successive codifications ·of our laws to the present time, is identical in language with the provision in the New York reported code, as above quoted. That such borrowing from this reported New York code took place is further indicated by the incorporation in the preceding two sections of the Code of 1851 of provisions found in other sections of the New York reported code, in almost identical language. Indeed, it is well known that the codes of the States of Missouri (1849), California (1850), Kentucky (1851), Indiana (1852), Ohio (1853), and Wisconsin (1856), and the territories of Minnesota (1851), Oregon (1854), Washington (1854), and Nebraska (1855), were to a large extent borrowed from the New York Code. See Hepburn, Development of Code Pleading, 93–103.

Although the New York reported Code of Civil Procedure of 1849 (published in 1850·), which first contained the provision above quoted did not become an enacted code, the provision itself, as announced in the .case of Potter v. Ontario & L. Mut. Ins. Co., *supra,* was specifically recognized by the New York courts as a rule of law as well as of ethics.

See *Hoffman v. Ætna Fire Ins. Co.,* 32 N. Y. 405 (88 Am. Dec. 337); *White v. Hoyt,* 73 N. Y. 505; *Johnson v. Hathorn,* *41 N. Y. 476. And, on the authority of these New York cases, the rule has been recognized elsewhere as common law. *People v. Auditor General,* 17 Mich. 161; *American Loan & T. Co. v. Toledo, C. & S. R. Co.* (C. C.); 47 Fed. 343; *Potter v. Berthelet* (C. C.), 20 Fed. 240; *Kendrick v. Life Ins. Co.,* 124 N. C. 315 (32 S. E. 728, 70 Am. St. Rep. 592). Therefore, while the rule with us is statutory, it is, after all, only an announcement of a principle of common law. It was so held in *Peterson v. Modern Brotherhood,* 125 Iowa, 562. And we may therefore look to the application of the rule as at common law to determine its proper interpretation as a statutory provision.

An examination of the cases already cited will show that the common-law rule has been limited in its application to cases in which there has been a controversy arising under a contract in ambiguous language, or in which some mistake or uncertainty has appeared with reference to the subject matter to which the language is sought to be applied. The rule has never been recognized as authorizing the interpretation of plain and unambiguous language of a written instrument in accordance with any other meaning than that indicated by the words used in the instrument. The rule is thus limited in 2 Parsons, Contracts (9th Ed.) *498, where this language is used:

It may be true, ethically, that a party is bound by the meaning which he knew the other party to intend, or to believe that he himself intended (citing Potter v. Ontario & L. Mut. Ins. Co., *supra,* and the passage from Paley's Moral and Political Philosophy, there quoted); but certainly this is not always legally true. Thus, in the cases already supposed, he who was to give might know that the party who was to receive (a foreigner, perhaps, unacquainted with our language) believed that the promise was for " oxen " when the word " horses " was used; but, nevertheless, an action on this contract could not be sustained for " oxen." So, if

he who was to pay money knew that the payee expected compound interest, this would not make him liable for compound interest as such, although the specific sums payable were made less because they were to bear compound interest. In all these cases, it is one question whether an action may be maintained on the contract so explained, and another very different question, whether the contract may not be entirely set aside, because it fails to express the meaning of the parties, or is tainted with fraud; and, being so avoided, the parties will then fall back upon the rights and remedies that may belong to their mutual relations and responsibilities. These must be determined by the evidence in the case; and the very contract, which as a contract, could not be enforced, may perhaps be evidence of great importance as to the rights and liabilities of the parties.

And to the same effect, see 2 Page, Contracts, section 1127; 4 Wigmore, Evidence, section 2466. So as to an analogous rule, that the construction put by the parties upon the instrument is to be taken into account, it is said: "Where there is doubt as to the proper construction of an instrument, this feature of the case is entitled to great consideration; but, where its meaning is clear in the eye of the law, the error of the parties cannot control its effect." *Railroad Co. v. Trimble,* 10 Wall. (U. S.) 367 (19 L. Ed. 948). In illustration of similar principles, see *Mowatt v. Lord Londesborough,* 3 E. & B. 307 (77 E. C. L. 307); *Smith v. Hughes,* L. R., 6 Q. B. 597; *Raffles v. Wichelhaus,* 2 H. & C. 906. In this last case, often referred to as the case of the "Peerless," the question was as to which of two consignments of cotton was referred to in a contract relating to a shipment of cotton by the ship Peerless, from Bombay, it appearing that there were two ships of that name carrying consignments of cotton from the same port, and it was held that the one party was bound by the understanding of the other known to him, that the language did not refer to the consignment to which it was attempted to apply the contract. See discussion of this case in Holmes, Common Law, 310, and 4 Wigmore, Evidence, section 2466.

The New York Code commissioners explain the provision in the section reported by them, as already indicated, by adding a note in which they quote the language of Dr. Paley, and an illustration made use of by him (citing Paley's Moral Philosophy, 85, 97), and say:

It is not the sense in which the promisor actually intended it, that always governs the interpretation of an equivocal promise; because, at that rate, you might excite expectations, which you never meant, nor would be obliged, to gratify. Much less is it the sense in which the promisee actually received the promise; for, according to that rule, you might be drawn into engagements which you never designed to make. It must therefore be the sense (for there is no other remeaning) in which the promisor believed the promisee accepted his promise. This will not differ from the actual intention of the promisor, when the promise is given without collusion or reserve; but we put the rule in the close form to exclude evasion in cases in which the popular meaning of a phrase, and the strict grammatical construction of the words, differ; or, in general, wherever the promisor attempts to make his escape through some ambiguity in the expressions which he used.

It is evident that the commissioners understood the rule as having application only when the language to be interpreted is equivocal or ambiguous either in the terms used, or as to the subject-matter to which it is to be applied.

The applications of the statute in our own cases serve as illustrations of the general proposition of which the statute is an embodiment. In *Pierson v. Armstrong,* 1 Iowa, 282, which was decided within four years after the statutory provision now under consideration was first embodied in the law of the State, it is said that the provision has no application; the case being one in which relief is denied in equity against a mistake of law. In *Snow v. Flannery,* 10 Iowa, 318, the provision is applied in determining that an indefinite and equivocal statement should, under the circumstances, be construed as a contract to convey. In *Thompson v. Locke,* 65

Iowa, 429, it is held that the provision was applicable in determining whether the employment of one person to do certain specified work was exclusive of the employment of another, there being nothing in the language used to directly indicate whether the employment was exclusive or not. In *Cobb v. McElroy,* 79 Iowa, 603, the question was whether the statutory provision was applicable to parol contracts, and this question was answered in the affirmative. In *Chicago Lumber Co. v. Tibbles Mfg. Co.,* 80 Iowa, 369, the court was called upon to determine whether a purchase of lumber was made by the defendant from the plaintiff, or whether the lumber was received by the defendant from a member of plaintiff company in payment for shares of stock in the defendant company. There was no question as to the construction of the contract for accepting lumber in payment of stock, but the question was one of fact, whether the lumber was actually delivered for that purpose, or in pursuance of a general sale. It would be very material, of course, in settling this controversy, to know whether the officer of defendant ordering the lumber understood, when it was ordered that it was to be in payment for stock. The intention of the parties was involved, not with reference to the meaning of the agreement under which the stock might be taken in exchange for lumber, but with reference to whether the lumber was ordered and delivered in pursuance of that agreement. In *McCorkell v. Karhoff,* 90 Iowa, 545, the question is as to the interpretation of the warranty that a stallion sold for breeding purposes was a " foal getter," and whether the evidence in the case showed that the animal came within the terms of the warranty, and it is said that the seller must have known that the warranty was accepted as meaning that the horse was a reasonably sure or safe foal getter in view of the fact that he was bought exclusively for such a use. In *Evans v. McConnell,* 99 Iowa, 326, the controversy was whether the contract called for a certain kind of stone work, or whether the kind of work actually done and ac-

cepted entitled the party doing it to compensation beyond
that provided for in the contract.   The question was not
therefore as to the legal meaning of the language used, but
its actual meaning, as applied to a particular kind of work,
and the contract itself provided that any controversy of this
kind should be referred to the architect, so that the contrac-
tor, proceeding to do the work in the method which he had
reason to know the property owner understood to be within
the terms of the contract, without raising any question which
could be referred to the architect, was precluded from after-
wards contending that he was entitled to extra compensation.
In *Wood v. Duval,* 100 Iowa, 724, the question was whether
plaintiff, who had a landlord's lien on certain chattel property
and accepted a chattel morgage on the same property, re-
leased his landlord's lien by releasing the lien of his mort-
gage, so that one who took a subsequent chattel mortgage on
the same property acquired priority over such landlord's
lien; and the question was, as to a matter of fact, not the in-
terpretation of the language of the contract.   In *Wood v.
Allen,* 111 Iowa, 97, the statutory provision was held ad-
missible in determining whether parol evidence should be
received to show that terms used in a mercantile contract had
acquired by the custom of the locality or the usage of the
trade a particular significance, and it is said that such evi-
dence does not contradict the terms of the contract, but sim-
ply applies them to the subject-matter.   In *Brown v. Curtis,*
111 Iowa, 542, the question was whether the parties intended
a second contract to be a substitute for the first, and it was
held admissible to show that the one party knew when he
entered into the second contract that the other party so under-
stood it.   In *Field v. Eastern Building & Loan Ass'n,* 117
Iowa, 185, the statutory provision was considered as assist-
ing in the construction of a contract involving the by-laws
of an association containing apparently inconsistent provi-
sions.

These are all of our cases which are relied upon by the

appellee in support of the contention that the statutory provision is authority for the introduction of parol evidence to show that the terms of this contract, requiring the machinery to be satisfactory to the defendant, which were held by us in the first appeal (124 Iowa, 737), to be plain and unambiguous as a matter of law, were understood by the plaintiff, to the knowledge of the defendant, as having a different meaning from that which the terms themselves as used import. On the other hand, we have said that this section does not authorize the introduction of parol evidence to vary a written contract by showing that the intent of the parties was different from that implied in the words used (*Walker v. Manning,* 6 Iowa, 519); and that in the absence of fraud, accident, or mistake, a contract is to be construed by the language employed, and not according to the views of its meaning entertained by the parties executing it (*Congower v. Equitable Mutual Life & End. Ass'n,* 94 Iowa, 499), and, further, that the provision is only applicable to a case where the writing involved is fairly susceptible of different meanings (*Rouss v. Creglow,* 103 Iowa, 60); and, in this case, it was said that in each and all the previous cases in which the statutory provision had been applied, " the contract was either held to be susceptible of different constructions, or the question whether it was so susceptible was submitted to the jury." The rule of these cases is fully recognized in *Field v. Eastern Building & Loan Ass'n,* 117 Iowa, 185, and later in *Peterson v. Modern Brotherhood,* 125 Iowa, 562. We have referred to the points decided in these cases in some detail, for the purpose of showing that in not a single case has the statute been resorted to for the purpose of affixing a different meaning to the plain and unambiguous terms of a contract than those imported by the language used, and we think appellee's position is without support in ajudicated cases in this or any other State.

The conclusion above indicated as to the interpretation of this statutory provision is inevitable unless we are to

abandon the well-settled rule that prior or contemporaneous conversations are not admissible to contradict the terms of a written instrument. If a party may introduce parol proof of his understanding that the language of a formal written instrument assented to by him is different from that which in law can be attributed to it, and that the other party had reason to believe that he thus misunderstood it, then the way is open to attack any written instrument by parol evidence. The very object of the rule is to enable parties by reducing their contracts to definite and specific language, to avoid the uncertainty that must result from the introduction of evidence as to parol conversations preceding or accompanying the execution of the instrument, which conversations may easily have been misunderstood or indefinitely recollected, or may be testified to by witnesses on the one side without the other party being able to meet such testimony, so as to establish the ultimate fact of intent. The purpose of the rule, as we understand it, is to substitute an instrument in plain terms for the uncertain recollection or the conflicting evidence of witnesses as to parol conversations. The rule is not adopted as one of ethics, and it may be highly objectionable from an ethical point of view for a party to insist on a written instrument which does not correctly represent the intention of the other party. But, to avoid the manifest opportunity for fraud and mistake involved in the introduction of parol evidence as to intent in conflict with the intent as clearly expressed in the instrument itself, it has been recognized as promotive of ultimate justice that such parol evidence shall not be admitted. Whether the rule interferes with ethical justice in a particular case is not for the court to say. Principles of ethics and rules of law must necessarily at times be inconsistent, else it would be useless to maintain and administer rules of law. We do not intimate that in this particular case there was even an ethical wrong on the part of the defendant. We have no

occasion to go into that question, and have no right to do so.
The trial court should not have submitted such a question
to the determination of the jury. There is no allegation or
proof of fraud, nor is there any proof of mistake of fact.
Plaintiff was in no way misled or deceived with reference to
the exact language used in the contract.

It is contended however for appellee that Horace In-
man, who represented the plaintiff firm in the making of
the contract, was a resident of New York, and the negotia-
tions for, and the final execution of, the con-
2. SAME.          tract itself took place in Illinois, and that in
both New York and Illinois the language of a contract re-
quiring the purchaser to be satisfied is interpreted as mean-
ing only that the performance shall be such as would be
satisfactory to a reasonable person, and therefore it is claimed
the plaintiff had reason to suppose the language would re-
ceive the interpretation which has been given to it by the
courts of those States, although, as a matter of fact, the con-
tract was to be performed in Iowa, and therefore must be
governed as to the sufficiency of the performance by the laws
of Iowa. But we are entirely unable to understand the
theory for which appellee is contending in this respect. The
plaintiff firm must be presumed to have understood the law
to be that sufficiency of performance would be determined
by the law of Iowa, and it had no right, therefore, to de-
pend on cases in New York or Illinois as settling what that
interpretation would be. If it desired to have other language
than that used in the contract; i. e., language which, as we
construe it, is plain and unambiguous as to the necessity for
actual satisfaction on the part of defendant, then it should
have had the language modified to embody its intention. It
would lead to manifest uncertainty, and would subvert the
parol evidence rule already referred to if one party to a con-
tract were allowed to introduce parol evidence of the inter-
pretation put upon the language of such contract in States
other than that according to the laws of which the contract

is to be interpreted, for the purpose of showing that he intended to employ the language in accordance with the interpretation given to it in such other States, and that the other party to the contract had reason to know he was doing so. The parties could, by express provision, have made the interpretation of the language depend upon the law of the State where plaintiff resided, or the law of the State where the contract was in fact executed; but, not having done so, it is not open to the plaintiff to show by parol evidence what his intention was in the use of the language nor to attribute to defendant knowledge of such specific intention not embodied in the language employed.

II. In the opinion on the first appeal, it was said that if defendant's dissatisfaction with the machinery was in good faith, it mattered not whether it was reasonable or unreasonable. The court instructed the jury on the second trial that the burden of proof was upon defendant to establish that the machinery was not satisfactory to it or its officers by a preponderance of the evidence, and that " the defendant's officers, in determining whether or not they were satisfied with such machinery, must have acted honestly and in good faith. They had no right to base their action on any whimsical, fictitious notion, or mercenary motive." This instruction was, as we think, plainly erroneous. The burden was not upon the defendant to show by a preponderance of the evidence that its officers were not in fact satisfied with the machinery. Under the contract, the obligation of the defendant was to pay in thirty days from installation of the machinery, " providing everything works to the satisfaction of the officers of the American Cereal Company "; and it was for the plaintiff to show by proof of the acceptance of the machinery that defendant's obligation to make payment had matured. Any evidence of acceptance would be competent on the question of satisfaction; but, in the absence of any evidence of acceptance, we cannot understand how the

3. SAME: action for price: burden of proof: instruction.

burden would be on the defendant to show want of satisfaction, and especially was it objectionable to say that such want of satisfaction must be shown by the defendant not to have been whimsical, fictitious, or mercenary. No doubt it is true that plaintiff would be entitled to damages, if the defendant in bad faith refused to accept the machinery, but still the burden would be on the plaintiff to show that the refusal was in fact in bad faith, and not on the defendant to show that it was in good faith, and with honest motives.

Many other points are presented in argument on behalf of appellant, principally with reference to the correctness of certain instructions asked and refused. There are forty-eight of these instructions, and it would be manifestly impossible to discuss all of them. It is sufficient to say that we do not now pass upon their correctness, believing that the views expressed in our opinion, on the former appeal, dispose of all the questions raised as definitely and specifically as would be possible were we to again enter upon a discussion of those questions.

For the errors pointed out, the judgment of the lower court is *reversed*.