WILLIAM J. SLICER, LAWRENCE SLICER, WILLIAM CROMWELL SLICER; AND MARCELLA SLICER, MINORS, BY THEIR FATHER AND NEXT FRIEND, WILLIAM J. SLICER, AND MARTHA VIRGINIA BERKLEY, JEREMEMIAH BERRY, AND THOMAS CROMWELL BERRY, APPELLANTS. *v.* THE BANK OF PITTSBURG.

Where there was a mortgage of land in the city of Pittsburg, Pennsylvania, the mortgagee caused a writ of *scire facias* to be issued from the Court of Common Pleas there being no chancery court in that State. There was no regular judgment entered upon the docket, but a writ of *levari facias* was issued, under which the mortgaged property was levied upon and sold. The mortgagee, the Bank of Pittsburg, became the purchaser.

This took place in 1820.

In 1836, the court ordered the record to be amended by entering up the judgment regularly, and by altering the date of the *scire facias*.

Although the judgment in 1820 was not regularly entered up, yet it was confessed before a prothonotary, who had power to take the confession. The docket upon which the judgment should have been regularly entered, being lost, the entry must be presumed to have been made.

Moreover, the court had power to amend its record in 1836.

Even if there had been no judgment, the mortgagor or his heirs could not have availed themselves of the defect in the proceedings, after the property had been adversely and quietly held for so long a time.

THIS was an appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

The facts of the case are stated in the opinion of the court.

It was argued by *Mr. T. Fox Alden* and *Mr. Johnson*, for the appellants, and by *Mr. Hepburn* and *Mr. Loomis*, for the appellee.

The points made by the counsel for the appellants were the following:—

1. That a proceeding of *scire facias sur mortgage*, in Pennsylvania, is literally a bill in equity to foreclose the equity of redemption, and forfeit the estate of the mortgagor. Dunlop's Digest, 31, Act of 1705.

2. That the proceedings being in the nature of a bill in equity to foreclose the mortgage, the principles of equity, in that particular branch of chancery procedings, are alone applicable. Self-evident.

3. That amendments of judgments at common law, with all the authorities authorizing the entries of judgments *nunc pro tunc*, can in no case be applicable to amendments of decrees in equity, for foreclosure, because the reason of the law does not apply in such case, but *e converso*.

4. That while the bill to foreclose the equity of redemption is pending, the equitable bar, by analogy, does not run any more than the statute would run, while suit at law was pending. 1 Powell on Mortgages, 320.

5. When it has been shown that suit was instituted, it is incumbent on the party wishing to avoid the effect of the principle of *lis pendens*, to show that the cause was legally terminated. 13 How. 332.

6. The issuing of final process, void on the face of the record, does not terminate suit, at law; still less, is it to be construed in equity in such manner as to forfeit the estate of the mortgagor. Needs no authority.

7. No release of the equity of redemption, by express parol agreement, or by implication, arising from the acts of a distressed debtor, or mortgagor, in waiving inquisition, or notice, or appraisement, can compromit his rights as mortgagor; and work a forfeiture of his estate, when his solemn covenant, contained in his condition of absolute sale, in his mortgage, will not be permitted to have such effect.

8. That estoppels, either at law or equity, are only allowable to advance justice, never in equity, to work a forfeiture of estate.

9. That presumptions are not allowed at law or equity, against fact, *a fortiori*, in equity, when such allowance would defeat an estate, the favorite of equity. 11 How. 360.

10. The confession of judgment, by warrant of attorney, in Pennsylvania, is not a judgment of record, until the confession of judgment is duly entered by the proper officer of record; still less is the parol declaration of any defendant, that he had confessed judgment, evidence of a judgment in Pennsylvania.

11. If such parol admission of the confession of a judgment is tantamount to the entry of a judgment in Pennsylvania, it must be a judgment for every purpose.

12. That the respondents cannot avail themselves of the amendment in this case, on the motion of Mr. Bradford, as they repudiate his acts as unauthorized by them, and further, without notice to Mr. Cromwell. Coke Litt. 303 a., 352 b.; Bull. N. P. 233; 1 Wash. C. C. R. 70; 11 Wheat. 286; 9 Cow. 274; 4 Metc. 384; 9 Wend. 147; 6 Ad. & Ellis, 469; 10 Ib.. 90; 5 Watts & Sergt. 306.

13. That even if the amendment of judgment was regular, it did not, and could not, sanctify a void execution and sale. 4 Wend. 678, 474, 480; 1 Stark. Ev. 283; 12 Johns. Rep. 213; 1 Moore & Payne, 236.

14. That if such judgment was regular, and within the powers of the court, it was interlocutory in its nature, the proceedings being in the nature of a bill of foreclosure, &c., and the defendants having been in possession of the mortgaged premises for sixteen years, would either have to account in equity, for the reception of the profits, or have the same liquidated by action at law.

15. Laches, either at law or equity, when both parties are *in pari delictu,* are available by neither; and in this case it was the fault of respondents, if they did not press their mo.tgage to the foreclosure of the equity of redemption.

From which preceding propositions, if established, we contend that it flows as a legal consequence:

1st. That there was no judgment of the court, which would authorize a writ of *levari facias.*

2d. The sale, therefore, being void, the equity of redemption still exists, and the mortgagee is bound to account for rents and profits, and if he paid his debt, is bound to reconvey the mortgaged premises, or pay the value thereof on such equitable principles as the court may determine to be just and equitable to all parties.

The points on the part of the appellee were the following:

I. The. *levari facias,* upon which the mortgaged premises were sold, was issued upon and fully warranted by a legal and valid judgment, confessed by Thomas Cromwell on the 13th day of September, A. D. 1820, to the plaintiff in the action

*sci. fa. sur mortgage,* No. 136, August term, 1820, (the Bank of Pittsburg *v.* Cromwell,) for the sum of $21,740.40. Of this the complainants have exhibited record evidence in the certificate of Edward Campbell, Jr., prothonotary of the Court of Common Pleas of Alleghany county, which may be found on page 17 of the record. That confession of judgment is a part of the record of which he certifies a full exemplification, and is correctly and rightfully certified as a part of the record. Reed *v.* Hamet, 4 Watts's Rep. 441; Lewis *v.* Smith, 2 S. & R. 142; Shaw *v.* Boyd, 12 Pa. State Rep. 216; Weatherhead's Lessee *v.* Baskerville, 11 Howard's 360; 7 S. & R. 206; Railroad Co. *v.* Howard, 13 Howard's R. 331; Cook *v.* Gilbert, 8 S. & R. 568; Wilkins *v.* Anderson, 1 Jones, 399; Sererenge *v.* Dayton, 4 Wash. C. C. R. 698.

II. If the entry of the judgment confessed by Cromwell in favor of the bank (upon a docket of the court) were requisite to its validity as a judgment, and material to the power and authority of the sheriff in acting upon the *levari facias,* by virtue of which the mortgaged premises were sold, it being the duty of the prothonotary to make an entry of the judgment upon a docket of the court, and the rough docket of 1820 having been lost, it will, after the lapse of thirty years, be presumed in favor of the validity of the proceedings, and for the protection of purchasers at a public judicial sale; that such entry was made by the prothonotary in pursuance of his duy upon the docket now lost. Shaw *v.* Boyd, 12 Pa. State Rep. 216; Owen *v.* Simpson, 3 Watts's Rep. 88; De Haas *v.* Bunn, 2 Barr, 338–9; Demarest *v.* Wynkoop, 3 Johns. Ch. Rep. 129, 146; 2 Peters, 162, 168.

III. The amendment made by the prothonotary, in the case of the Bank of Pittsburg *v.* Thomas Cromwell, No. 136, August term, 1820, by order of the court, on the 14th day of December, A. D. 1835, in the words and figures following, to wit, —

" September 13th, 1820, judgment confessed per writing filed, signed by defendant for the sum of twenty-one thousand seven hundred and forty dollars and forty cents, besides costs of suit a release of all errors, without stay of execution, and that the plaintiff shall have execution by *levari facias* by November term, 1820.                    H. H. PETERSON, *Prothonotary.*"
— was the legitimate exercise of an undoubted discretionary power, vested in the court, and is not the subject of revision in the Supreme Court of Pennsylvania, nor can its validity be properly questioned collaterally in the courts of the United States. Mara *v.* Quin, 6 Term Rep. 1, 6, 7; Murray *v.* Cooper, 6 S. & R. 126–7; Ordroneaux *v.* Prady, 6 S. & R. 510; Marine

Insurance Co. v. Hodgson, 6 Cranch, 217; Griffeth v. Ogle, 1 Binney, 172–3; 1 Burrow's Rep. 148, 226; Owen v. Simpson, 3 Watts, 87, 88, 89; Maus v. Maus, 5 Watts, 319; De Haas v. Bunn, 2 Barr, 335–9; Rhoads v. Commonwealth, 3 Harris, 273, 276–7; Strickler v. Overton, 3 Barr, 323; Clymer v. Thomas, 7 S. & R. 178, 180; Chirac v. Reimcker, 11 Wheaton, 302; Hamilton v. Hamilton, 4 Barr, 193; Latshaw v. Steinman, 11 S. & R. 357–8.

IV. The exhibit marked "B," filed with complainants' bill, and prayed to be taken as a part of said bill, shows (page 9 of the record) a judgment in the case of the Bank of Pittsburg v. Cromwell, entered the 13th of September, 1820, for the sum of $21,740.40, which fully authorized the *levari facias* and subsequent proceedings, estops the complainants from controverting its verity or validity, and is, in this proceeding, conclusive upon the rights of the parties. Rhoads v. Commonwealth, 3 Harris, 273, 276–7; Strickler v. Overton, 3 Barr, 325; Marine Ins. Co. v. Hodgson, 6 Cranch, 217; Chirac v. Reimcker, 11 Wheaton, 302; United States v. Nourse, 9 Peters, 8–28; Voorhees v. Bank of the United States, 10 Peters, 450, 478; Elliott v. Piersol, 1 Peters, 329, 340; Thompson v. Tolmie, 2 Peters, 157; Clymer v. Thomas, 7 S. & R. 178; Levy v. Union Canal Co. 5 Watts's Rep. 105; Hauer's Appeal, 5 W. & S. 275; Drexel's Appeal, 6 Barr, 272; Davidson v. Thornton, 7 Barr, 131.

The amendment cannot be collaterally impeached, though no notice is given to defendant. Robinson v. Zollinger, 9 Watts, 170; Tarbox v. Hays, 6 Ib. 398.

V. The complainants are, in equity, estopped from having the relief prayed in their bill, by the appearance of Thomas Cromwell before the prothonotary of Alleghany county, on the 13th of September, 1820, and confessing judgment before that officer in favor of the Bank of Pittsburg for the sum of $21,740.40, besides costs, with a release of all errors, without stay of execution, and that plaintiff (the Bank of Pittsburg) have execution by *levari facias* to November term, 1820 — by the entry signed by him (page 16 of the record) on the *levari facias* which recites a valid judgment warranting the sale of the mortgaged premises commanded by said writ — by his subsequent acquiescence, for the period of thirty years, in the sale, without objection or complaint, especially after the expenditure of immense sums in improvement, and a great consequent enhancement in the value of the property. Dezell v. Odell, 3 Hill, 215–219; 6 Adolphus & Ellis, 475; 33 Eng. Com. Law, 117; 10 Adolphus & Ellis, 90; 37 Eng. Com. Law, 58; Hamilton v. Hamilton, 4 Barr, 193; Robinson v. Justice, 2 Penn. Rep. 22; Epley v. Withero, 7 Watts, 163; Carr v. Wallace, 7 Ib. 400; 10 Barr, 530; 1 Story's Eq. Jur. § 387.

VI. The bank, and those claiming under it, having held the possession of the mortgaged premises for a period exceeding thirty years, without account for rents, issues and profits — without claim for such account by the mortgagor — without admission by the bank during that entire period, that it possessed a mortgage title only, — the mortgagor and those claiming under him have lost the right of redemption and claim to account, and the title of the mortgagee and those claiming under the mortgagee has become absolute in equity, whether the bank entered as mortgagee or vendee. 2 Story's Equity Jurisprudence, §§ 1028 a, 1520, and authorities there cited. Moore *v.* Cable, 1 Johns. Ch. Rep. 320; Hughes *v.* Edwards, 9 Wheaton's Rep. 489, 497–8; Dexter *v.* Arnold, 1 Sumner's C. C. Rep. 109; Rafferty *v.* King, 1 Keen, 602, 609–10, 616–17; Demarest *v.* Wynkoop, 3 Johns. Ch. Rep. 135; Story's Equity Pleading, 757; Strimpler *v.* Roberts, 6 Harris, 302; Elmendorf *v.* Taylor, 10 Wheaton, 168; Underwood *v.* Lord Courtown, 2 Scho. & Lef. 71; Dikeman *v.* Parish, 6 Barr, 211; 1 Powell on Mortg. 362 a, n. 1.

Mr. Justice McLEAN delivered the opinion of the court.

This is an appeal from the decree of the Circuit Court, for the Western District of Pennsylvania.

The complainants represented in their bill that their ancestor, Thomas Cromwell, was seised of a tract of land, containing one hundred and seventy acres, situate in the county of Alleghany, at or nearly adjoining the city of Alleghany, and also a certain lot of land situate in the city of Pittsburg, which were mortgaged by the said Cromwell to secure a debt of twenty-one thousand dollars which he owed to the Bank of Pittsburg. That the bank, on the 9th of June, 1820, caused a writ of *scire facias* to issue on the mortgage in the Court of Common Pleas, which had jurisdiction of the case, a service of which was accepted by the said Cromwell in writing, but that said writ was never legally returned. That without any judgment on the mortgage a writ of *levari facias* was issued, and the lands mortgaged were levied on and sold, and the bank became the purchaser.

That on the 1st of December, 1835, the bank, by its attorney, Bradford, moved the court for a rule on Thomas Cromwell, the defendant, to show cause on the second Monday of December, why the record of the case should not be amended on the docket, so that the judgment, which appears among the papers, should be entered as of September 13th, 1820. The rule was granted, and on the 14th of December, 1835, the same was made absolute, and judgment, *nunc pro tunc* entered in favor of the bank by the prothonotary of the court.

And on the 16th of March, 1836, the said Bradford moved that the *scire facias*, which had been issued should be amended, by inserting the 13th of September, 1820, instead of the 13th of May of the same year, so as to conform to the judgment, and the motion was granted and the amendment made.

The judgment entered on the papers was as follows: The Bank of Pittsburg *scire facias.* " In my proper person I this day appeared before the prothonotary in his office, and confessed judgment to the plaintiff for $21,740.40, besides costs, with release of all errors without stay of execution, and that the plaintiff shall have execution by *levari facias* to November term, 1820:" signed, Thomas Cromwell—which paper the clerk states was filed September 13th, 1820. This paper is alleged to be in the handwriting of the attorney, but the signature is admitted to be Cromwell's.

This authority, it is alleged, did not authorize the entry of a judgment, and that it was no part of the record, and cannot show the judgment, it being no more than parol proof; which cannot be received to establish a judgment, unless it be shown that the book containing the original entry had been lost.

The bank is alleged to have been in possession, by itself and tenants, of the property sold; and that there being no judgment, the proceedings on the *scire facias* are void, and that in equity the bank should only be considered as a mortgagee and compelled to account for the rents and profits, and be decreed to release the mortgage on receiving the money and interest on the debt due to the bank as aforesaid.

The complainants are shown to be the heirs of Thomas Cromwell.

The bank, in its answer, admits the facts as set forth in the bill as to the debt, the mortgage, the issuing of the *scire facias*, the judgment, and the sale of the premises, &c., and alleges their validity, under the laws of Pennsylvania. That the mortgage having been produced and the property sold, which, before the year 1829, was sold, and conveyed by the bank to different individuals, and that it has ever since been in the hands of innocent purchasers; and it alleges there is no right of redemption under the circumstances, and it prays that the bill may be dismissed at the cost of the complainants.

From the proceedings in this case it appears, that the records of the court, where the proceedings on the mortgage were had, are kept loosely, and differently from the judicial records of the courts of common law in England or in this country. But the usage must constitute the law, under such circumstances, as a requirement of the forms observed elsewhere, would affect titles under judicial sales to a ruinous extent.

By the Judiciary Act of Pennsylvania, of the 13th of April, 1791, it is provided that prothonotaries shall have the power to sign all judgments, writs, or process, &c., as they had for those purposes when they were justices of the court. Before this statute it appears that one of the justices of the court, having possession of the seal, signed all writs and judgments, took bail, &c., and performed the duties of prothonotary. And under the above statute, the prothonotary still exercises many judicial functions.

The confession of judgment with release of errors, and the agreement that execution should issue returnable to November term ensuing, evinced a desire on the part of the mortgagor, to remove every obstruction to a speedy recovery of the demand by the bank. The *scire facias* was returned to August term, 1820. This mode of procedure on a mortgage was authorized by a statute, and was intended as a substitute for a bill in chancery, there being no such court in Pennsylvania.

The objection to this judgment is, that it was not entered upon the minutes kept by the prothonotary. It is in proof that these minutes or dockets were not carefully preserved by the prothonotary, and that the one in which this entry should have been made is lost, but there is no positive proof that any such entry was made.

The prothonotary took the confession of the judgment in writing, and there can be no doubt he had power to do so. By the practice of the common pleas, it seems the judgment is entered sometimes on the declaration, at others on a paper filed in the cause. From the entry of judgment the prothonotary is enabled to make out the record in form when called for, but unless required, the proceedings are never made out at length. For this purpose it would seem that the paper filed, containing the confession of a judgment by the defendant, would afford more certainty than the abbreviated manner, in which it was usually entered.

In Reed v. Hamet, 4 Watts's Rep. 441, the court say that judgments by confession, on the appearance of the party in the office, taken by the prothonotary, though not universal, have, from time immemorial, been frequent, and their validity has never been questioned.

Confession of judgment is a part of the record when made out, and it may be copied from the papers in the case. Cooper v. Gillett, 8 Serg. & R. 568; McCalmont v. Peters, 13 Serg. & R. 196; Lewis v. Smith, 2 Serg. & R. 142; Shaw v. Boyd, 12 Pa. State Rep. 216; 7 Serg. & R. 206.

The docket being lost, under the circumstances the court would, if necessary, presume the entry of the judgment was

made on it. This presumption would rest upon the fact, that judgment was confessed with the release of all errors, and an agreement that execution should issue by the mortgagor, which execution did issue and on which the land was sold, shortly after which the mortgagor surrendered the possession and an acquiescence by him and his heirs for thirty years, would afford ample ground to presume that the prothonotary had performed the clerical duty of entering the judgment on the docket.

But the court had the power to make the amendment, which they did make, and which removed the objection, by causing the judgment to be entered *nunc pro tunc.* This was a duty discharged by the court, in the exercise of a discretion, which no court can revise. Clymer *v.* Thomas, 7 Serg. & R. 178, 180; Chirac *v.* Reimcker, 11 Wheat. 302; Latshaw *v.* Stainman, 11 Serg. & R. 357–8; Walden *v.* Craig, 9 Wheat. 576.

If there had been no judgment, under the circumstances, the complainants could have no right to redeem the premises.

The complainants file their bill to redeem the land, as mortgagors, which, by the improvements and the general increase of the value of real estate where the property is situated, has become of great value. Thirty years have elapsed since it was sold, under the appearance, at least, of judicial authority. The property was purchased by the bank for less than the amount of the debt. By the confession of judgment, with a release of all errors, and an agreement that execution should be issued, the mortgagor did all he could to facilitate the proceedings and to secure a speedy sale of the premises. The bank, it seems, in the course of some six or nine years, sold the p o- perty in lots to different purchasers, for something more, perhaps, than its original debt and interest. For nearly twenty-five years the purchasers have been in possession of the property, improving it and enjoying it as their own.

No dissatisfaction was expressed by the mortgagor, who voluntarily relinquished the possession, and none appears to have been expressed by his heirs, until the commencement of this suit. For thirty years the mortgagee and its grantees have been in possession of the property, no claim of right being set up for the equity of redemption, or on any other account. Under such circumstances a court of equity could give no relief had there been no legal judgment.

" Twenty years undisturbed possession, without any admission of holding under the mortgage, or treating it as a mortgage during that period, is a bar to a bill to redeem. But if within that period there be any account, or solemn acknowledgment of the mortgage as subsisting, it is otherwise. Dexter *v.* Arnold, 1 Sumn. C. C. Rep. 109.

A mortgagor cannot redeem after a lapse of twenty years, after forfeiture and possession, no interest having been paid in the mean time, and no circumstances appearing to account for the neglect. Hughes *v.* Edwards, 9 Wheat. 489. Where the mortgagee brings his bill of foreclosure, the mortgage will, after the same length of time, be presumed to have been discharged unless there be circumstances to repel the presumption, as payment of interest, a promise to pay, an acknowledgment by the mortgagor that the mortgage is still existing, and the like. Ib.

In every point of view in which the case may be considered, it is clear that there is no ground of equity, on which the complainants can have relief.

The decree of the Circuit Court is affirmed, with costs.

## Order.

This cause came on to be heard on the transcript of the record, from the Circuit Court of the United States for the Western District of Pennsylvania, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause, be, and the same is hereby affirmed, with costs.