HARTLEY v. LAPIDUS & HOLUB CO.

(Circuit Court of Appeals, Eighth Circuit. August 3, 1914.)

No. 3935.

**1. APPEAL AND ERROR (§ 960*)—PLEADING (§ 353*)—FILING OUT OF TIME—DISCRETION OF COURT.**

Under Code Iowa 1897, § 3552, providing that all pleadings must be filed by the time the cause is reached for trial, which, by virtue of the conformity statute (Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]), and rule 3, subd. 4, of the Rules of the District Court for the Southern District of Iowa, governs pleading in such court, and the further provisions of section 3622 of such Code that the allegations of an answer shall be deemed denied, the refusal of a District Court to permit the filing of a reply after trial has commenced, or the striking out of a reply then filed without leave, is within the sound discretion of the court, and its action is reviewable only for a gross abuse of discretion apparent in the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3825, 3832–3834; Dec. Dig. § 960;* Pleading, Dec. Dig. § 353.*]

**2. EVIDENCE (§ 461*)—VARIANCE OF WRITING BY PAROL.**

Code Iowa 1897, § 4617, providing that "when the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it," has no application where the language of the contract is plain and unambiguous, and does not authorize the introduction of parol evidence to vary the written contract by showing that the intent of the parties was different from that clearly expressed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2129–2133; Dec. Dig. § 461.*]

**3. SALES (§ 200*)—EXECUTORY CONTRACT—TRANSFER OF TITLE AS BETWEEN PARTIES.**

Plaintiff and defendant entered into a written contract in August, by which plaintiff agreed to sell to defendant his entire crop of apples then growing in his orchard at a stated price per barrel. The apples were to be picked by plaintiff at any time after certain dates named, packed by defendant in barrels which it was to furnish, placed in cars by plaintiff, and each car load to be paid for by defendant before leaving the station. When a portion of the apples had been picked, shipped, and for the most part paid for, there was a freeze, which rendered those remaining on the trees unsalable, and defendant refused to accept them. *Held*, that the contract was not one of sale, but was an agreement to sell under which title to the apples remained in plaintiff until they were picked and delivered, and that the loss of those frozen without fault on the part of defendant fell on plaintiff.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 524–528; Dec. Dig. § 200.*

Transfer of title as dependent on appropriation by seller, see note to H. Baars & Co. v. Mitchell, 83 C. C. A. 470.]

In Error to the District Court of the United States for the Southern District of Iowa; Smith McPherson, Judge.

Action at law by L. M. Hartley against the Lapidus & Holub Company. Judgment for plaintiff, for a part of his claim only, and he brings error. Affirmed.

---

Harold J. Wilson, of Burlington, Iowa (W. E. Blake, of Burlington, Iowa, J. C. McCoid, of Mt. Pleasant, Iowa, and George B. Stewart, of Fort Madison, Iowa, on the brief), for plaintiff in error.

John E. Bishop, of St. Louis, Mo. (Samuel F. Knox, of Chicago, Ill., and Thomas H. Cobbs, of St. Louis, Mo., on the brief), for defendant in error.

Before HOOK, ADAMS, and SMITH, Circuit Judges.

SMITH, Circuit Judge. The plaintiff in his petition filed October 25, 1909, says that the parties to this suit entered into a written contract as follows:

"Chicago, Aug. 24th, 09.

"Memoranda of agreement made this day between L. M. Hartley of Salem, Iowa, party of the first part and the Lapidus & Holub Co., 141 So. Water St. Chicago, Ill., party of the second part.

"Party of the first part agrees to sell to party of the second part his entire crop of apples now growing on his farm about four and one half (4½) miles south of Salem, Iowa consisting of orchard of about one hundred ten acres (110) for one dollar and fifty cents ($1.50) per barrel and to carefully pick said apples put in piles or on packing tables as party of the second part may direct, haul empty barrels from Houghton station and load filled barrels on cars at station or in storage at station or in cars on track near orchard.

"Party of second part agrees to furnish empty barrels as fast as needed, pack said apples as fast as picked if possible, measure up all apples picked from trees, no dropped apples to be included, and pay party of first part one dollar and fifty cents ($1.50) per barrel for same. Party of second part shall pay five hundred dollars ($500.00) this day which shall apply on last payment of apples and pay for each car before leaving the shipping station. Barrels to be standard size holding about 3 bushels.

"We further agree that Shackelford varieties of apples are not to be picked before Sept. 15th, 1909 and winter varieties not earlier than September 25th, 1909 but as soon after these dates as party of the first part may direct.

"Party of first part has privilege of reserving apples for his own use.

"[Signed]   L. M. Hartley,
"Lapidus & Holub Co."

That about 7,000 bushels of apples have been delivered under said contract and the defendant is indebted to the plaintiff in the sum of $507 on apples already shipped; that there are about 14,000 bushels of apples remaining on the trees frozen on the night of October 11th, and defendant has notified plaintiff's men not to pick any more apples, and that they would not accept any more apples under such contract, and that plaintiff has been damaged in the sum of $7,000 by defendant refusing to take the apples as agreed. In its answer, filed March 19, 1912, the defendant denies all the allegations of the petition, except the making of the written contract, and alleges that according to the terms of said contract plaintiff was to have the sole charge, control, and direction of picking said apples; that the failure to pick and deliver said apples in time to save them from injury and damage by frost was due solely to the negligence and delay on the part of the plaintiff; that by reason of said apples being frosted and frozen they were rendered worthless and of no value to the defendant; and that plaintiff by his contract had impliedly warranted to pick and deliver to the defendant good merchantable apples. In the amendment to the an-

swer filed before the trial commenced the defendant says that it denies that the contract operated to vest title in defendant to the apples then growing on plaintiff's farm, or that it passed the title of said apples to the defendant, but avers that said contract was but an agreement to sell, and left the title in the plaintiff until they were picked from the trees by him and delivered to the defendant, as required by the terms of said contract, and the title thereto only vested in the defendant as fast as the same were picked and delivered by plaintiff, but that before the balance of said apples had been picked and delivered by plaintiff, and while the ownership and title still remained in him, they froze upon the trees, and so became unmarketable and worthless and in fact were never picked and delivered. After the trial to a jury had commenced, and after the trial court had practically ruled against the plaintiff on all the matters involved in this case, the plaintiff, without leave of court, filed a reply as follows:

"Plaintiff denies that by said contract he was to deliver to defendants good merchantable apples, or that this was so implied, but states the facts to be as follows:

"That in negotiating for the purchase of said apples the defendants stated that they desired to buy such of the apples as would be good merchantable apples, and plaintiff refused to sell said apples in that way; that defendant offered plaintiff 75 cents per bushel for the good merchantable apples in said orchard, but plaintiff refused to sell said apples that way and told them that he would take the less sum of 50 cents per bushel for said apples, they taking all the apples on the trees, which was agreed to, and the contract in question was prepared by defendants pursuant to said oral agreement and as embodying the same. That the defendants agreed when negotiating the deal, saw and inspected the apples before the contract was entered into. That by reason of said facts the defendant cannot now be heard to say that this is an implied warranty that the apples would be sound, merchantable apples, and is estopped from so asserting.

"Plaintiff admits that on the night of October 11, 1909, there came a hard freeze, which froze the greater part of the apples remaining upon the trees on that date, but denies that the title to said apples had not passed to defendants, and alleges the facts relating thereto to be as follows: That such typewritten contract was reduced to writing by defendants in Chicago in duplicate and sent to plaintiff to sign in duplicate, with directions to return one copy to defendant, which plaintiff did not do on receiving same. That several days after he had received said contract from defendants, defendants called him up by telephone from Chicago and asked him why he had not signed the contracts, and plaintiff replied that it fixed the date of picking so late that the apples might freeze before they were picked, and he was not certain where loss would be, and that thereupon the defendant replied that after plaintiff signed the contract the apples were theirs and the late date of picking and freezing would not affect plaintiff or be any loss to him. The defendants having placed this construction upon the contract in question, it cannot now be said that the title to said apples had not passed to them at the time of said freeze, and are estopped from so asserting.

"And plaintiff further states that at the time of said freeze he had a large number of men hired to pick apples, hired at large expense, and that the getting of said men together was attended with large expense. That on the morning following the freeze defendant told plaintiff and his men in charge of picking to stop picking for the present and to hold their men there, which the plaintiff did under protest. That during the day following the freeze defendant told plaintiff and his agents in charge of picking to let the apples remain on the trees a few days, and then they would be all right. That the plaintiff, relying upon defendant's statement and directions, held his men for several days at a large expense so as to be ready to pick said apples as di-

rected by defendant, all of which was at the time known to the defendant, knowing that if plaintiff let the pickers go and separate that it would take time and expense to get pickers together again. That defendant directed plaintiff to go among the trees in orchard and pick the apples from the trees which were not frozen, which the plaintiff did at defendant's direction, picking about one-fourth of the apples on some 100 or 150 trees, which were barreled and shipped and are included in the 2,285 barrels mentioned in pleadings of defendants. That the picking of said apples in that way was accompanied with much more expense to plaintiff than picking all the apples from the trees. That on the 20th day of October, 1909, the defendant notified plaintiff that they would not receive the remainder of the apples and not to pick them. That prior to said notification the defendants had treated said apples as their own, and had given plaintiff directions to let them stand on trees and they would be all right in a few days, and had ordered plaintiff to hold his men in readiness to pick same at great expense and directed the picking of some of the apples from some trees, and balance of apples in question were left, and defendants, therefore, by reason of such facts and statements over telephone before signing of contract, are estopped from denying that title to the apples passed to them under the contract in question, and have waived any and all conditions precedent to the passing of title that may be in said contract. That the foregoing facts and acts on part of defendant amount to a construction of said contract by them, and they are now bound thereby.

"Plaintiff further alleges that the defendant filed in this court a construction based upon said contract and based upon the title to said apples having passed to defendant, and that the same amounted to an election upon part of defendant to treat said contract as passing title and an election of their rights, and they cannot now assert a different or inconsistent right. That by reason of all the foregoing facts the defendant is estopped from denying that title to the apples in question passed to them prior to the freeze, and have waived any condition in said contract precedent to the passing of title, and have construed said contract prior to the signing thereof, and at all times up to the 16th day of October. 1909, as passing title to them of the apples in question and as now bound by said contract.

"Plaintiff further alleges that if the apples had been shaken to the ground the next morning after the freeze, the frost would have gone out and would not have materially affected same, but same were left upon the trees at direction of defendant, and, being so directed, the leaving of said apples, and they being thus spoiled, the defendant is estopped from denying title thereto or liability for the contract price of said apples."

The defendant filed a motion to strike this reply from the files, which was sustained. The plaintiff delivered 2,285 barrels of apples under this contract, and was paid thereon something over $2,900. On the trial it was agreed there was due the plaintiff for apples delivered $507, with interest of $91.26, and the court on motion of the defendant peremptorily instructed the jury to find for the plaintiff for $598.26 and no more, and the plaintiff brings the case here on error. The trial commenced to a jury on October 16, 1912.

[1] The first error assigned is that the court erred in sustaining the defendant's motion to strike the plaintiff's reply from the files.

Section 914, Revised Statutes (U. S. Comp. St. 1901, p. 684) provides:

"The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the circuit and district courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of court to the contrary notwithstanding."

By subdivision 4 of rule 3 of the District Court of the United States of the district in which this action was tried, adopted with the approval of the judges of this court, it is provided that:

"Except as otherwise provided in these rules, and except as provided for in the laws of the United States in force at the time action is sought to be taken in this court, pleadings and practice and procedure, both before and after judgment, shall be as then prescribed in the laws of the state of Iowa."

The Iowa law at the time in question provided (section 3576, Code 1897):

"There shall be no reply except:  *  *  *  2. Where some matter is alleged in the answer to which the plaintiff claims to have a defense by reason of the existence of some fact which avoids the matter alleged in the answer."

It is also provided by section 3622 that the allegations of an answer are to be deemed controverted.

Under the Iowa statute it is held that the law implies a denial of all the allegations of the answer, and there was therefore an implied denial of all of the allegations of the answer and the case was at issue. It is provided in section 3552 of the Iowa Code that all pleadings must be filed by the time the cause is reached for trial. True the courts of Iowa are very liberal in allowing amendments of the issues and these laws are applicable in the District Court, but under the federal practice they are left entirely to the sound discretion of the trial court. While in this case the reply stricken was the first reply filed anterior thereto, there was a reply by operation of law and the proposed reply was in the nature of an amendment to the issues, if not in fact an amendment to the implied controverting of the allegations of the answer. When the trial was entered upon, the issues were framed and complete, and any attempt to change them was within the sound discretion of the trial court, and at least in the absence of gross abuse apparent in the record could not be reversed. Mandeville v. Wilson, 5 Cranch, 15, 3 L. Ed. 23; Marine Ins. Co. v. Hodgson, 6 Cranch, 206, 3 L. Ed. 200; Sheehy v. Mandeville, 6 Cranch, 253, 3 L. Ed. 215; Walden v. Craig, 9 Wheat. 576, 10 L. Ed. 393; Chirac v. Reinicker, 11 Wheat. 280, 6 L. Ed. 474; Wright v. Hollingsworth, 1 Pet. 165, 7 L. Ed. 96; United States v. Buford, 3 Pet. 12, 7 L. Ed. 585; Boyle v. Zacharie, 6 Pet. 648, 8 L. Ed. 532; Pickett v. Legerwood, 7 Pet. 144, 8 L. Ed. 638; Breedlove v. Nicolet, 7 Pet. 413, 8 L. Ed. 731; Ex parte Bradstreet, 7 Pet. 634, 8 L. Ed. 810; Walden v. Craig, 14 Pet. 147, 10 L. Ed. 393; Holmes v. Jennison, 14 Pet. 540, 614, 10 L. Ed. 579; Murphy v. Stewart, 2 How. 263, 11 L. Ed. 261; Slicer v. Bank of Pittsburg, 16 How. 571, 14 L. Ed. 1063; Spencer v. Lapsley, 20 How. 264, 15 L. Ed. 902; Tilton v. Cofield, 93 U. S. 163, 23 L. Ed. 858; Ricker v. Powell, 100 U. S. 104, 25 L. Ed. 527; Chapman v. Barney, 129 U. S. 677, 9 Sup. Ct. 426, 32 L. Ed. 800; Bullitt County v. Washer, 130 U. S. 142, 9 Sup. 499, 32 L. Ed. 885; Gormley v. Bunyan, 138 U. S. 623, 11 Sup. Ct. 453, 34 L. Ed. 1086; Sawyer v. Piper, 189 U. S. 154, 23 Sup. Ct. 633, 47 L. Ed. 757; Royal Ins. Co. v. Miller, 199 U. S. 353, 26 Sup. Ct. 46, 50 L. Ed. 226; Vicksburg v. Vicksburg Waterworks Co., 202 U. S. 453, 26 Sup. Ct. 660, 50 L. Ed. 1102, 6 Ann.

Cas. 253; Oregon & Transcontinental Co. v. Northern Pac. R. Co. (C. C.) 32 Fed. 428; Sheffield & B. Coal, Iron & R. Co. v. Newman, 77 Fed. 787, 23 C. C. A. 459.

But, wholly aside from this question, we will briefly consider whether the reply did present any proper issue in connection with the consideration of the other assignments of error.

They are:

(2) The court erred in the construction of the contract as set forth in the record in holding that the title to the apples remaining on the trees after the night of October 11, 1909, remained in the plaintiff, Hartley, and as such apples were not afterwards picked by Hartley, he cannot recover the contract price thereof.

(3) The court erred in holding, ruling, and adjudicating that said contract was executed as to the apples picked and executory as to the apples frozen on the trees.

(4) The court erred in not allowing recovery by plaintiff for the 12,672 bushels of apples frozen on the trees, to wit, $6,381, with 6 per cent. interest thereon from October 11, 1909, in addition to plaintiff's recovery of $598.26 and costs.

It must be borne in mind that this is not an action in equity to reform the contract, and such an action would in all probability have failed, nor is it alleged that this was a contract in part in writing and part oral, but the allegation is that the contract was in writing and the writing was as hereinbefore set forth.

[2] Plaintiff calls attention to section 4617 of the Code of Iowa.

"When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it."

But it was held as early as Walker v. Manning, 6 Iowa, 519, that this section did not authorize the introduction of parol evidence to vary the written contract by showing that the intent of the parties was different from that implied in the words used therein. The provision is only applicable to a case where the contract involved is fairly susceptible of different meanings. Rouss v. Creglow, 103 Iowa, 60, 72 N. W. 429. And this statute has no application where the language of the contract is plain and unambiguous. It is but declaratory of the common law. Inman Manufacturing Co. v. American Cereal Co., 133 Iowa, 71, 110 N. W. 287, 8 L. R. A. (N. S.) 1140, 12 Ann. Cas. 387; Capital City Carriage Co. v. Moody, 135 Iowa, 444, 110 N. W. 903.

[3] It is manifest that if there were latent ambiguities in this contract this statute would be applicable, but there is nothing to indicate that such ambiguities exist. Here the chief question is whether the contract was in itself a sale of the apples while on the trees, so as to pass the ownership, or was it in legal effect only an agreement to sell, an executory contract.

In Mechem on Sales (Ed. 1901) par. 5, it is said:

"If there be an agreement for sale and the goods perish, the loss falls on the seller: while if there has been a sale, the loss, as a rule, falls on the buyer, though the goods have not come into his possession."

216 F.—7

And in Benjamin on Sales (Ed. 1888) p. 237, § 308:

"After a contract of sale has been formed, the first question which suggests itself is naturally: What is its effect? When does the bargain amount to an actual sale, and when is it a mere executory agreement?

"We have already seen that the distinction between the two contracts consists in this: That in a bargain and sale, the thing which is the subject of the contract becomes the property of the buyer the moment the contract is concluded, and without regard to the fact whether the goods be delivered to the buyer or remain in possession of the vendor, whereas in the executory agreement the goods remain the property of the vendor till the contract is executed. In the one case, A. sells to B.; in the other, he only promises to sell. In the one case, as B. becomes the owner of the goods themselves as soon as the contract is completed by mutual assent, if they are lost or destroyed, he is the sufferer. In the other case, as he does not become the owner of the goods, he cannot claim them specifically; he is not the sufferer if they are lost, cannot maintain trover for them, and has at common law no other remedy for breach of the contract than an action for damages."

At the time of the making of the contract the apples were still growing and a part of the real estate, and it must be presumed that the contract contemplated they should be nourished from the soil until ripe. The plaintiff was to pick the apples and deposit them in piles or on packing tables. It is manifest that under our settled rules of construction the title did not pass until these things were done. Elgee Cotton Cases, 22 Wall. 180, 22 L. Ed. 863.

Where the written contract purports on its face to be a memorial of the transaction it supersedes all prior negotiations and agreements, and oral testimony will not be admitted of prior and contemporaneous promises on a subject so closely connected with the principal transaction with respect to which the parties are contracting as to be a part of the transaction itself without the adjustment of which the parties cannot be considered to have finished their negotiations and finally concluded a contract. Chicago Lumber Co. v. Comstock, 71 Fed. 477, 18 C. C. A. 207; and, to the same effect, see Godkin v. Monahan, 83 Fed. 116, 27 C. C. A. 410.

There is nothing tending to sustain the alleged estoppel and nothing tending to sustain the claim of an election of remedies. It is true that where one has two remedies and he elects to prosecute one of them, he cannot subsequently prosecute the other, but the first essential to this defense is that it shall appear that there were two remedies. It is true that the agreement was to sell the entire crop of apples "now growing on his farm," and this contract can never be carried out in its entirety, but the destruction of the apples was due either to the negligence of the plaintiff in failing to have them picked before the 11th of October, or an untimely frost, which was an act of God, destroyed them. If either of these avoid the entire contract, it may be that he was not entitled to recover for the apples delivered under the contract, but under a quantum meruit, but in Buskirk Bros. v. Peck, 57 W. Va. 360, 50 S. E. 432, it was held under such circumstances he could recover under the contract. In any event the plaintiff has recovered under the contract for the apples delivered, and he cannot complain that he has been permitted so to do.

There is no error apparent prejudicial to the plaintiff and the judgment of the District Court is affirmed.