## NEW AMSTERDAM CASUALTY CO. v. IOWA STATE BANK.

(Circuit Court of Appeals, Eighth Circuit. July 14, 1924.)

No. 6590.

1. Pleading ⬦⟾236(2)—Disallowance of amendment to answer at trial not abuse of discretion.

Permitting amendment of pleadings is within the sound discretion of the trial court, and refusal to allow an amendment of the answer, raising a new issue, offered at the close of defendant's evidence on a second trial of the cause, which had been pending for two years, was not an abuse of discretion.

2. Insurance ⬦⟾335(3)—Provision of policy held not to exclude evidence of loss outside of books.

In a policy insuring a bank against robbery from the counters or cages only, a provision that insurer should not be liable if the books were not so kept that the loss might be accurately determined therefrom must be reasonably construed, and does not require the books to show at all times the amount of money and securities on the counters or in the cages, nor to exclude other evidence on that question, where the books are kept in the ordinary way.

3. Trial ⬦⟾140(1)—Weight and credibility of testimony is for jury despite contradictory testimony on former trial.

A cause on a retrial is to be determined on the evidence given on that trial, and while contradictory statements made by a witness on a former trial may be shown to affect his credibility, the ultimate question as to the weight and credibility of his testimony is for the jury.

4. Election of remedies ⬦⟾3(4)—Commencement of suit for loss against another held not to bar action on policy.

Under a provision of a policy that the recovery of all or any part of a loss from other than insurer shall be for the benefit of insured until fully reimbursed, any excess to be paid to insurer, commencement of a suit by insured against another is not an election of remedies, which bars an action on the policy.

In Error to the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Action at law by the Iowa State Bank against the New Amsterdam Casualty Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Oscar Strauss, of Des Moines, Iowa (Brockett & Strauss, of Des Moines, Iowa, on the brief), for plaintiff in error.

H. W. Byers, of Des Moines, Iowa (Howard J. Clark and Gregory Brunk, both of Des Moines, Iowa, on the brief), for defendant in error.

Before LEWIS and KENYON, Circuit Judges, and FARIS, District Judge.

KENYON, Circuit Judge. This case has heretofore appeared in this court and is reported in 277 Fed. 713. A very complete

statement of facts is there found to which reference is made. It will be sufficient here to say that the action was to recover upon a bank burglary and robbery policy for the loss of money and securities stolen from defendant in error bank by robbers.

The judgment entered upon the first trial in the United States District Court, Southern District of Iowa, in favor of defendant in error, was reversed by this court; the court holding that under the policy sued on plaintiff in error was responsible only for the cash and securities taken by the robbers from the counters and cages of the bank and not for that taken from the safe. In the present action the district court narrowed the controversy to practically a single issue, viz.: How much of money and securities were taken by the robbers from the cages and counters of the bank?

The jury made special findings under the direction of the court that $16,000 of cash and $6,000 of bonds were stolen from the counters and cages on the date of the robbery, to wit, March 25, 1919, and returned a verdict for the full amount of the policy, $20,000 and interest from April 22, 1919. The policy in question was issued to the Iowa State Bank on or about the 26th day of December, 1918. Its purpose was to indemnify the bank against loss of money and securities by burglary or robbery, not to exceed the sum of $20,000.

Reference will hereafter be made to certain particular features of said policy, it being unnecessary to set it out either in full or in part. A reversal of the judgment entered by the trial court is asked, and four propositions are urged for such reversal. We consider them in the order of their presentation:

[1] First. The refusal by the court to grant plaintiff in error permission to file its second amendment to the answer setting up as a defense under the policy that the books of the bank had not been so kept that the loss could be accurately determined therefrom. This amendment was offered at the close of plaintiff in error's evidence. The case had been once tried, and had been in court for two years, but the particular issue involved in the proffered amendment had not been raised. The matter of permission to file the amendment was within the sound discretion of the court, and the refusal to grant the same, under the circumstances, was no abuse thereof. Hartley v. Lapidus & Holub Co., 216 Fed. 92, 132 C. C. A. 336; Lange v. Union Pac. R. Co., 126 Fed.

338, 62 C. C. A. 48; Gubbins v. Laugtenschlager et al. (C. C.) 75 Fed. 615; McKemy et al. v. Supreme Lodge, A. O. U. W., 180 Fed. 961, 104 C. C. A. 117; Stillwagon v. Baltimore & O. R. Co., 159 Fed. 97, 86 C. C. A. 287. Further, the question presented by the amendment inheres to some extent in the second proposition urged by plaintiff in error, to which we now refer.

[2] Second. It is insisted that there is no competent evidence in the record to support the cause of action of defendant in error, for the reason that the contract of insurance provided the character of evidence by which the amount of loss must be shown, and plaintiff in error insists that no other evidence could be offered, and that the evidence offered was incompetent, because it was not the evidence of the bank books, and that the court should have directed a verdict for it on this ground. We do not understand that, under the terms of the policy no evidence could be offered to show the losses except the books of the bank. Subdivision (c) of No. 2 of Special Agreements in the bond provides: *"When Company Not Liable. * * * If the books and accounts of the assured are not so kept that the loss may be accurately determined therefrom by the company."*

It seems to be the theory of plaintiff in error that under this provision it was the duty of the bank to keep books from which the exact loss might at any time be ascertained. If this is what the policy means, it would be necessary at every moment of the day to figure out the amount of money and securities on the counters and in the cages and preserve it in some bank book, so that, if any robbery occurred, there would be a book record. Evidently in practical banking this would be well-nigh impossible. Such a construction of this provision would make practically impossible any recovery for a loss under the policy. Certainly this was not the intention of either party to the contract. The policy does not require any particular kind of books to be kept, and it does not appear that it was customary for banks to keep books which would show the amount of money and securities on hand at any particular moment. No strained or impracticable construction should be indulged in as to this provision. All that is required is a substantial compliance therewith. From the record it appears that the usual bank books were kept, including what was known as a teller's book, and these books did show in a general way the amount of money and securities in the

bank. They were kept in the usual and ordinary way that bank books are kept, and the general loss in a robbery or burglary could fairly be ascertained therefrom. Indeed, it appears from the record that plaintiff in error's agent, Dudley, had no difficulty by examination of defendant in error's books in making up a statement of loss by the robbery. Mr. Pharmer, assistant cashier, testified that he was sure there was between $22,000 and $24,000 of cash and Liberty bonds in the cages on the morning of the robbery March 25, 1919. After the robbers had gone, it is without question that but little of this was left. If the jury was entitled to weigh the evidence of Mr. Pharmer and give it credence, there was ample evidence to warrant the verdict, and this leads to the third contention of plaintiff in error, viz.:

[3] Third. That the testimony of Pharmer, assistant cashier, was contradictory and inconsistent with his testimony given on the first trial, and that it was therefore the duty of the court to instruct the jury specifically as to the effect of such contradiction, and that, if he be regarded as representative of a corporate party to the action, plaintiff in error was entitled to have its motion for directed verdict sustained. There are several answers to this proposition. It is to be noted that plaintiff in error did not request any further instruction on the subject from that given by the court, and took no exception thereto. Evidently referring to the claim that contradictory statements had been made by Pharmer at the first trial, the court said: "Now you will take into consideration not only the words of the witnesses as you have heard them from the witness stand here at this time, but any statements they have made at any other time with regard to the same fact." We do not understand that, if there be contradictions or inconsistencies in the testimony of the witness upon a retrial of the case, the question of weighing his credibility can be taken from the jury by the court. The evidence given on the retrial is the evidence upon which the case is to be determined. Hess v. Dicks et al., 192 Iowa, 378, 184 N. W. 742; State v. Carpenter, 124 Iowa, 5, 98 N. W. 775; Curlee v. Reeves & Co., 85 Neb. 358, 123 N. W. 420.

Statements made on a former trial to the contrary are admissible as bearing on the credibility of the witness, but the ultimate question as to the weight and credibility of his testimony is for the jury. Portions of the testimony of Mr. Pharmer on the former trial are in the record as a part of the cross-examination, and some of it may fairly be said to be inconsistent with the testimony given in the present trial. However, its truth and its weight were for the jury. It is not a similar situation to that presented in the very interesting case of Steele v. Kansas City Southern Railway Co., 265 Mo. 97, 118, 175 S. W. 177, 182. There the plaintiff swore to a state\of facts which would have precluded recovery. Later in the same trial he returned to the stand, and without any explanation of his former testimony, or any reason for different testimony, swore to a very different state of facts without any claim being made by him or his counsel of misunderstanding, inadvertence, oversight, or mistake. The court held that plaintiff had "sworn himself out of court by his testimony," and that the probative effect of such contradiction was for the court as a matter of law, but the court said: "We need not reiterate that as to a mere witness no state of facts could ordinarily arise upon any matter of contradictory evidence that would oust the triers of fact of their privilege in a lawsuit of resolving the truth of such contradiction." That case is far different from the case at bar, and could be no authority for the position taken here. The weight of Pharmer's testimony was for the jury.

[4] Fourth. Plaintiff in error alleges that because of suit brought in Arkansas against one Ward to recover all or a portion of the property stolen that defendant in error had elected to pursue the property, and hence could not proceed against the bond company; that the pleas in bar and abatement should therefore have been sustained; and that the court erred in overruling each of them. Of course, the general principles applicable to an election of remedies are well-established and understood. A party cannot pursue inconsistent remedies. It is admitted here that defendant in error assigned the cause of action to William H. Harwood, trustee, and later to E. H. Hunter, a former president, and George Dissmore, and that these assignees did bring suit in the state of Arkansas against Ward, and that such suit was pending when this case was tried. In this connection we turn to the contract between the parties, and the provisions relating to the terms and conditions of subrogation. Provision No. 6 is as follows:

"No. 6—*Payment of Loss. Subrogation Suit.* Loss shall be payable immediately upon submission to the company of proof thereof, as provided herein, but no suit shall be brought under this policy until three months

after the particulars of the loss, as required herein, have been received by the company, nor at all, unless commenced within twelve months after the date of the burglary or robbery. In the event of recovery of any loss or portion thereof, from other than insurance, whether by the assured or by the company, the assured shall be entitled thereto until fully reimbursed, the excess, if any, to be paid to the company, except that the company shall be reimbursed from such recovery for actual expenses incurred in obtaining said recovery."

This provision amounts to an agreement that the assured may seek recovery of the loss elsewhere, and if he is fully reimbursed thereby any excess is to be paid over to the company. This is apparently all that was being done by the assured, and was for the benefit of the insurer. Of course, the assured was not entitled to double recovery for its loss, and if it should succeed in its Arkansas suit the insurer would be entitled to what was recovered if it had paid the loss. The remedy pursued in Arkansas, being provided for by the contract, is not inconsistent with the action against the bond company. It is merely acting in accordance with the contract provision before referred to. The principle applicable here was well expressed by the Supreme Court of Iowa in Austin Mfg. Co. v. Decker, 109 Iowa, 277, 80 N. W. 312: "The whole doctrine of election is based upon the theory that there are inconsistent rights or remedies of which a party may avail himself; and a choice of one is held to be an election not to pursue the other. The principle does not apply to coexistent and consistent remedies."

The issues in this case are clear and not difficult of solution. We find no error in the record, and the judgment of the trial court is affirmed.